## JOHN WILKINS,

### *vs.*

### ELISHA EVANS.

*Sussex, March T.* 1821.

Under a lease of lands, for the term of six years, with the right in the lessee to purchase the same, upon paying a stipulated price therefor, within the six years—

*Held,* that the lessee, having paid the purchase money within the time limited therefor, was entitled to a decree for specific performance, though after the six years had elapsed :—

*Held also*, that even though the purchase money had not been fully paid within the time limited therefor, the purchaser was nevertheless entitled to relief, if full payment were prevented through the default of the vendor.

A contract in writing for the sale of lands cannot be discharged by a parol agreement, except that equity will relieve where the parol agreement has been acted upon and the condition of the parties thereby changed.

*It seems*, that under the Delaware Statute about contracts and assumptions a written contract for the sale of lands cannot be waived except in writing.

BILL FOR SPECIFIC PERFORMANCE.—This bill was for the specific performance of a written contract for the sale of lands, which was in the words following, viz :

" Articles of agreement, between Elisha Evans of the " one part, and John Wilkins of the other part, witness, " that the said Evans doth agree, for his part, to let said " Wilkins have a plantation that he bought of Mr. Conoway " of Wm., for the term of six years from the first day of " last January ; and said Wilkins doth agree, for his part, " to give said Evans eighteen dollars per year for said place, " and to put the said place under a good fence, and to put " a good framed house eighteen feet long and sixteen wide, " with two good floors, and to be covered with shingles, and " a good brick chimney, and to be pillared well with brick ; " and to build a good smoke house and a good corn-crib, " and to dig and frame a good draw well for water, and " at the expiration of the above mentioned six years, said " Wilkins doth agree to give up the said place to said Evans " with the above mentioned items, all in good order, unless " the said Wilkins should see proper to buy the said place, " and if he sees proper to pay the said Evans three dollars " per acre for said place *before* the expiration of the above " mentioned six years, then said Wilkins is to have the " place; but, be it remembered that the above mentioned " eighteen dollars per year for the use of said place, for " which said Evans has said Wilkins' notes, is not to be

" included in the price of said land, if said Wilkins should
" see proper to purchase it. And for a true performance
" of the above mentioned agreement, we bind ourselves to
" each other in the penalty of $600. As witness our hands
" and seals this 27th day of February, 1813."

(Signed,)      ELISHA EVANS,    { L. S. }

                       his

Witness present,     JOHN X WILKINS, { L. S. }
        his          mark.

(Signed,) SCUYLER X SPICER,
            mark.

     JOSHUA McCALLEY.

The complainant, upon the execution of the contract,
gave single bills for the stipulated annual rent of $18.00,
payable in the six successive years of the renting, and
entered into possession of the land as lessee. There was
evidence shewing sundry payments made by him to the
defendant and goods and grain delivered, during the six
years of the tenancy, which, it was insisted on his part,
were credits on account of the purchase money in the
written contract mentioned. Disputes arose between the
parties touching some of these payments, the amount of
them, and whether they were applicable to the purchase
money. It was also in dispute whether a certain balance
of account, due from the defendant to the complainant
prior to the contract, was applicable to the purchase
money, the complainant claiming it so to be, while the
defendant insisted that this account had been extinguished
by the single bills given for the rent under the contract.
The defendant also claimed to be allowed, in the settle-
ment, the value of some of the improvements which, under
the contract, the complainant as lessee was to put upon
the land, but which he had failed to make. In con-
sequence of these disputes no settlement was reached be-

fore the six years limited in the contract for completing the purchase had elapsed, and no conveyance had been made. The six years expired, the 1st of January, 1819. This bill was filed, the 18th of May, 1820. The defence taken against a decree for specific performance was, (1) the expiration of the six years' limitation of time, which it was insisted was of the essence of the contract ; and (2) that the contract had been abandoned or waived by parol. To this latter point some evidence was adduced of declarations on the part of the complainant to the effect that he had given up the land.

The cause came before the Chancellor, for a hearing upon the bill, answer, exhibits and depositions, at the March T., 1821.

*Wells*, opened for the defendant.

How far time is material in a contract depends upon the intention of the parties. It is material if they have made it so, and such is the fair construction of the contract in this case. 1 *Bac. Abr.* 109, ( *Wilson's Ed'n*); 1 *Fonb. Eq.*, 392 : 4 *Bro. Ch. Rep.* 332 : 3 *Ves. Jr.* 693 : 4 *Ves. Jr.* 686 : 5 *Ves. Jr.* 730 : 5 *Cranch* 278.

Further, the evidence proves that Wilkins gave up this contract. The relief by a decree for specific performance being discretionary with the Court, it will not interfere when the contract has been discharged or abandoned by the parties, though such discharge were by parol.

*Robinson*, for the complainant.

As to *time*, the cases cited do not apply. They apply where *nothing has been done ;* but where a purchaser has paid part or nearly all of the purchase money, the defendant shall not rely on time. 1 *Mad. Ch. Pr.* 328 &c. With respect to *waiver*, the rule is, that a parol agreement, unless

it has been executed or acted upon, will not discharge a written contract. 2 *Eq. Cas. Abr. c.* 44. *p.* 33 : 1 *Vernon* 240 : *Sugd. on Vend.* 96—98.

RIDGELY, CHANCELLOR.—The defendant has contended that a specific execution of this contract should not be decreed, because, as he alleges, the complainant did not before the expiration of the six years pay the purchase money. He says that the time is made the essence of the contract ; that, therefore, it is material ; and that, as the complainant failed to perform his part within the limited period, a specific performance ought not to be compelled.

It becomes necessary to examine the evidence and see whether Wilkins paid, within the six years, the stipulated price of the land, and if he did not, by whose default it happened ; and then to consider whether, according to the principles of equity, he still may be allowed to pay the balance, if any, and have a decree for the conveyance of the land to him.

[ The Chancellor here entered into a detailed examination of the evidence touching sundry payments made by the complainant to the defendant, and their applicability to the purchase money.]

Upon an examination of the evidence, I am of the opinion that the several sums which ought to go to the credit of Wilkins, in payment for the land, considerably exceed the purchase money. But supposing a balance of the purchase money to be due, it is proper to inquire by whose default this happened. In this inquiry, I have no difficulty in fixing the whole blame upon Evans.

It is evident that Wilkins endeavored to effect a settlement with Evans in Dec. 1818. He went to the house of Evans; he produced his account ; and then, for the first time, Evans objected that the notes for the rent had extinguished all charges in the account against him prior to

their date, though it is obvious from the testimony, that he considered, when the contract was made, that these charges of Wilkins were to be applied to the purchase of the land. Evans then proceeded to state the accounts himself, and struck a balance of $150 or $200, in his own favor. In this statement he included the supposed expense of erecting the buildings, &c.; which, upon no pretence, could be due to him, because the six years had not expired and no right to compensation had accrued to him. Wilkins, if he had determined to abandon the purchase, had the whole term of six years to erect the buildings and make the improvements ; and consequently, Evans, then had no claim for compensation on account of any default in that respect. Evans then proposed to submit to the arbitration of Thomas Pepper and James Maul his estimate of the value of the supposed buildings ; but he never proposed to submit the whole accounts, and without yielding to his own charges and allowances no settlement could be accomplished. Evans, in this business, acted with a view of re-possessing the land and retaining all the money paid on articles furnished, although they amounted to more than double the six years' rent. Evans annexed a condition, certain to frustrate any settlement. His own statement was to be accepted, except as to the price of the buildings, the balance made out by himself was to be paid, and the land was to be yielded up. This was not the only attempt which Wilkins made to adjust this matter. Before or after the meeting at Evans' house, Wilkins, aided by Doctor McIlvaine, wrote to William Russell and Eli Pepper to assist in the settlement with Evans. The letter being shown to Evans, he immediately rejected it, alleging that he was not on friendly terms with Russell. All these proceedings clearly demonstrate two things ; *first,* that Wilkins was extremely anxious to adjust the accounts and discharge the balance, if any ; and *second,* that Evans resisted every proposition, unless he were permitted to be

the sole arbiter. In cases of this kind, where a variety of payments had been made, in the various productions of the land, on account of the purchase money, with the express understanding of the parties, it would be a monstrous doctrine, indeed, if there were a small balance due and all attempts to ascertain that balance were rendered abortive by the party bound to convey, to say that time is so essential that unless the payments were completed to the very day the contract should be annulled. I have met with no such cases. Evans himself interposed the difficulties to prevent a compliance by Wilkins ; and now he attempts to take advantage of a failure (if there were any failure) of which he was the cause. Wilkins, it is true, if any balance were due, might have made a tender ; but the arrangement of the parties in the origin exempted Wilkins from this necessity. The accounts were to be kept by McColley ; various articles had been delivered and services rendered by Wilkins in performance of his part of the contract ; and a settlement became necessary before the expiration of the six years. Hence, it was, that Wilkins became urgent for a settlement ; and hence it was, that Evans objected, made difficulties, and in the end succeeded in preventing an adjustment and in preventing Wilkins from discharging the balance, if any were due.

Several cases have been cited on the part of the defendant, as authorities to show that the plaintiff is not entitled to a specific execution of this contract. The facts in those cases are totally variant from the facts in this cause, and the principles contained in them justify a decree in favor of the plaintiff.

In the *Marquis of Hertford vs. Boore*, 5 *Ves. Jr.* 719, in a note, is cited *Milward vs. Earl Thanet*, at the Rolls, March 24th, 1801, where a bill for a specific performance was dismissed. Lord Alvanley, then Master of the Rolls, observed, that Lord Kenyon was the first who set himself

against the idea that had prevailed, that where an agreement was entered into either party might come at any time; but that it is now perfectly known, that a party cannot call upon a court of equity for a specific performance, unless he has shown himself ready, desirous, prompt and eager.

In *Omerod vs. Hardman,* 5 *Ves. Jr.* 722, 786, the time for the performance was held to be material, and Graham Baron said, that in *Whittaker vs. Whittaker,* 4 *Bro. Ch. Rep.* 31, it appears, Lord Kenyon re-called the true rule, holding that a vendor was not to await the arrangement of a testator's affairs, and therefore directing a contract to be delivered up.

In *Lloyd vs. Collett,* 4 *Bro. Ch. Rep.* 469, and 4 *Ves. Jr.* 689, in a note to *Harrington vs. Wheeler,* the Lord Chancellor says; " there is nothing of more importance than that " the ordinary contracts between man and man, which are " so necessary in their intercourse with each other, should " be certain and fixed; and that it should be certainly " known when a man is bound and when not. There is a " difficulty to comprehend how the essentials of a contract " should be different in equity and at law. It is one thing " to say the time is* so essential, that in no case in which " the day has by any means been suffered to elapse the " Court would relieve against it, and decree performance. " The *conduct of the parties, inevitable accident, &c., might* " *induce the Court to relieve.* But it is a different thing to " say, the appointment of a day is to have no effect at all ; " and that it is not in the power of the parties to contract, " that if the agreement is not executed at a particular " time the parties shall be at liberty to rescind it. In " *most of these cases there have been steps taken.* Is there any " case in which, without any previous communication at " all between the parties, the time has been suffered to

*In the case as reported in Vesey and the note in Brown, the word " not" occurs here, evidently by mistake.

" elapse ? I want a case to prove that, *where nothing has been* " *done by the parties*, this court will hold, in a contract of " buying and selling, a rule, that certainly is not the rule " at law, that the time is not an essential part of the con- " tract." The Lord Chancellor then considered the particular circumstances of the case, and decreed upon them against the plaintiff, because he not only had done nothing but absolutely refused to complete it. In the principal case, *Harrington vs. Wheeler*, the *plaintiff had done no act,* and his bill was dismissed with costs.

The principle upon which the Chancellor acted in those cases is not be controverted,for the parties who claimed the assistance of the Court had taken no steps, and had suffered the time to elapse considerably beyond the period for a completion of the contracts without an attempt to execute them. How different is this case ? Wilkins commenced immediately his payments, continued them to December, 1818, and then endeavored to effect a settlement to pay the balance, if any were due.

In the case of *Eaton vs. Lyon*, 3 *Ves. Jr.* 690, 692–3 ; the Master of the Rolls says, " at law a covenant must " be strictly and literally performed ; in equity it must be " really and substantially performed, according to the true " intent and meaning of the parties, so far as circumstances " will admit ; but if by unavoidable accident, or if by fraud, " by surprise, or ignorance not wilful, parties may have " been prevented from executing it literally, a court of " equity will interfere ; and upon compensation being " made, the party having done everything in his power and " being prevented by the means I have alluded to, will give " relief. It is true, that has been formerly carried to a " length that became, in some degree, alarming. They got " into a habit of construing terms and conditions of cove- " nants, as being only *in terrorem* : but undoubtedly, in " modern times, that has been much restrained, and it is " now perfectly understood, *that even in the purchase of an*

" *estate,* if money has been covenanted to be paid at a given
" day, at law no action will lie; but if the party can show, that
" he took the means of paying it, and has been prevented by
" accidents not in his power, the Court will dispense with
" the strict performance of it, because, as it was formerly
" said, it is not of the essence of the contract; but it may
" be of the essence of the contract, and the party shall not
" avail himself of equitable circumstances, unless he shows
" that there has been no willful neglect or misconduct on
" his part."

These cases are subsequent to *Milward vs. Earl Thanet,*
and moderate the terms, "*ready, desirous, prompt and eager,*"
said to have been used by Lord Alvanley, to a reasonable
rule of construction. They are founded upon common
sense and justice. Indeed, it would be a mockery of all
equity and good conscience to suffer a party, to prevent
the performance of an agreement and then to claim its
avoidance under a failure produced by himself. Wilkins
was constantly ready and willing. Evans created the diffi-
culties. Wilkins did everything in his power. He took
the means of paying ; there was no wilful neglect; and if
there is any balance unpaid, the Court will dispense with
the strict performance.

As to the ground of defence that the contract was aban-
doned, the whole evidence taken together does not sus-
tain the allegation. But even if the parol agreement were
unequivocally proved, it would not be sufficient to rebut
the plaintiff's equity; because, the situation of the parties,
in no respect, was altered by it. There was no part exe-
cution, and Evans has not sustained the slightest loss or
inconvenience by it. *Vide* 1 *Mad. Ch. Pr.* 323. And were
all other objections to this supposed parol agreement
removed, I should doubt extremely whether it could oper-
ate against the written contract. To waive the written
contract would be as much a contract about lands as to
make it ; and our Act about contracts and assumptions, 1

*Del. Laws* 327, has declared that an agreement upon any contract or sale of lands, or any interest in, or concerning them, shall not be binding; unless it be reduced to writing. And it should be admitted upon strong and positive proof and to rebut a hard and oppressive claim.

In the case of *Goman vs. Salisbury* 1 *Vern.* 240, it was held that an agreement in writing might be discharged by parol. And in 5 *Vin. Abr. pl.* 38 and *Legal vs. Millar*, 2 *Ves. Sr.* 299, evidence was given, on the ground of part performance, to discharge a written by a subsequent parol agreement; but this was done to rebut an equity, in one of the cases where the written agreement was a hard one; and in both, because the parol agreement had been partly executed. Lord Hardwicke, in *Buckhouse vs. Crosby*, 2 *Eq. Ca. Ab.* 32, 36, *pl.* 44, said, in such cases he should expect very clear proof. Now here, the written agreement is not hard upon Evans, but is highly advantageous to him, although it should be strictly executed by him. Upon Wilkins, as appears from the testimony, it is, under the most favorable circumstances, extremely hard. The terms in the agreement itself are severe beyond any that I have ever seen.

Upon the whole, I am very clear that the defendant should be decreed to convey this land to the complainant.

Let a decree be entered for a specific execution of the contract.