# CASES

IN THE

# SUPREME COURT

ON APPEALS FROM THE

## COURT OF CHANCERY

JESSE CHANDLER,
Defendant below, Appellant,

*vs.*

RALPH HOLLINGSWORTH
Complainant below, Appellee.

*Supreme Court, on appeal, Jan.* 21, 1918.

In a suit for specific performance of a contract for the sale of land, evidence
*held* not to sustain the defense that the contract had been induced by false
representations as to the identity of the purchaser.

APPEAL FROM COURT OF CHANCERY. The plaintiff filed a
bill in the Court below praying for a decree for specific performance
by the defendant of an agreement signed by the latter November first, 1916, for the sale of a certain farm in New Castle County.
The Chancellor, in granting the decree, gave no opinion other
than the following:

"After argument and a careful review of the testimony, I am clearly
satisfied that the defense was not sustained by the evidence, and that there
was no equitable ground shown for refusing to the complainant the relief
sought."

It is undisputed that the defendant was an old and infirm
man, and that the farm in question had been in the possession
of his family for more than two hundred years; that prior to the
execution of said agreement the plaintiff had no communication

of any kind with the defendant; that all negotiations leading up to the signing of the agreement were had between Hollingsworth on the one side and Mr. and Mrs. Harvey, or one or both of them, on the other; that Chandler's entire knowledge respecting the sale, and the identity of the purchaser, came through the Harveys, who communicated to him the information given them by Hollingsworth that he was trying to sell, or thought he might sell, the farm to Francis I. duPont; that the Harveys represented Chandler in all the negotiations respecting the sale of the farm before the agreement was signed, under which Hollingsworth was to receive from Chandler a deed upon the payment of thirty-five thousand dollars; that Hollingsworth paid to Chandler five hundred dollars at the time the agreement was executed, and has since tendered to him a deed for execution, and been ready and willing to pay the residue of the purchase money on delivery of a good and sufficient deed, which Chandler refused to give; that if Hollingsworth sold the farm for thirty-five thousand dollars, he was to receive for his trouble five hundred dollars, and if he sold the farm for more than thirty-five thousand dollars, he was to receive three per cent. of the purchase price; that the plaintiff was to pay Mr. Harvey three per cent. of whatever sum Mr. duPont might pay him for buying the farm; that the plaintiff sold the farm, or agreed to sell it, to Irenee duPont who gave him one thousand dollars for purchasing the farm.

The only reason given by Chandler for refusing to perform his part of the agreement is:

"That his attitude for a long time past had been that the farm should be sold to Francis I. duPont if and whenever he should sell it, because the said Francis I. duPont owned adjoining lands, and because of a request in that regard made of him many years past by the said duPont's mother; that Hollingsworth knowing Chandler's attitude, represented, in negotiating for the sale, that he was acting for Francis I. duPont (with whom Chandler and the Harveys had no communication); that such representations, relied upon by Chandler, were false; that he would not have signed the agreement had he ·known that Francis I. duPont would not thereby acquire the farm, and therefore returned to Hollingsworth the money paid at the signing of the agreement."

Although it appears that Jesse Chandler was old and infirm, it is not claimed that he was insane, incapable of transacting

business, or unable to manage his affairs. It is not contended that he was imposed upon by Hollingsworth because of his age or infirmity. The defense is based entirely upon fraud, but there is no claim that the fraud was perpetrated because Chandler was alone, unprotected and at the mercy of Hollingsworth at the time he signed the agreement. It is undisputed that the Harveys and also Mr. Lynam, Chandler's private counsel, were present. The fraud relied upon by the defendant to excuse him from performing his part of the agreement, is that the complainant was, at the time the agreement was signed, acting as agent of the defendant, and that the defendant signed the agreement on the representation of the complainant that he was acting for Francis I. duPont, which representation the complainant knew to be false, and which was a material inducement for the defendant to execute the agreement.

A part of the evidence submitted by the complainant to rebut the charge of fraud made by the defendant consists of two letters addressed to Irenee duPont, and which were admitted in evidence over defendant's objection. One of those letters was dated September twenty-fifth, 1916, signed, "Jesse Chandler, per M. E. J. Harvey," and contained, among others, these words:

"Should you care to take the whole farm then you could manage such to your liking."

It contained also the following:

"P. S. Should you consider taking the farm for all information address M. E. J. Harvey, * * * do not send any of your agents for information communication private."

The other letter was dated October sixteenth, 1916, and signed "Mrs. M. E. J. Harvey." It contains a general description of the farm, the price for which it could be bought, which was fifty thousand dollars, states that she requested him in her other letter not to send agents because they annoyed Mr. Chandler; and contains also the following pertinent and significant words:

"If the farm should be bought by you or anyone else, Jesse Chandler would have to have his lifetime right there. * * * It is just recently Mr. Chandler has made up his mind the farm could be sold. If he could remain there his lifetime. You see Mr. Chandler is not piticular whether it is sold

or not. You people being circulated around him. He thought you might need the land and it would make it more convenient by having possession of it. This pricing the farm to you is for no length of time. If others wish to buy and take it we have the right to sell at once, or in the future. I do not know whether you are one of the Powder firm below us Francis I. duPont or not. My husbin spoke to him, or rather Mr. Edwards his manager. If we should sell it makes no difference to us who buys the farm. We have offered it to you people first."

At the close of this letter was the following:

"P. S. Do not send agents for information. They annoy Mr. Chandler."

In the agreement the defendant signed there is a reservation of the right to occupy the house and a certain part of the land during his lifetime, in substantially the same language as is employed in Mrs. Harvey's letter. And it may be also noted that the farm in question adjoins not only the lands of Francis I. duPont but also those of Irenee duPont.

Argued before PENNEWILL, C. J., and BOYCE, CONRAD and RICE, J. J.

*Charles F. Curley*, for the appellant.

*Hugh M. Morris*, of the firm of Saulsbury, Morris & Rodney, for the appellee.

PENNEWILL, C. J., delivering the opinion of the Court, after stating the facts and contentions as above:

As we view the case there are but two questions to be determined, viz.:

1. Were the two letters referred to legally admissible in evidence?

2. Was the Chancellor warranted, under the evidence, in holding that there was no equitable ground shown for refusing to the complainant the relief sought by his bill.

The objection to the introduction of the letters was based on the fact that they were admitted solely on the admission of Mrs. Harvey that the signatures attached thereto were in her handwriting, when she was not permitted to see the letters or know what preceded the signature. She was shown only the signatures. While the record shows that the defendant objected to the admission of the two letters, and that their admission is

assigned as error, there is not a word in his brief sustaining or supporting such objection and assignment. The Court might, therefore assume that such assignment has been abandoned. If such assumption is correct, and the letters are properly in evidence, there is certainly a preponderance of testimony in support of the conclusion reached by the Chancellor. The Court feel the more convinced that such assumption is correct because it is their distinct recollection that at the argument counsel for the defendant stated that he relied only upon the third specification of error, viz:

"That the Chancellor erred in holding that there was no equitable ground shown for refusing to the complainant below the relief sought by his bill."

It having been shown that the letters were received by Irenee duPont in due course of mail, that they were admittedly signed by Mrs. Harvey who was acting for the defendant in the sale of his farm, and were pertinent to the issue before the Chancellor, counsel no doubt concluded they were properly and legally admitted in evidence.

The fraud charged, and upon which the defense is based, is that the complainant while acting as agent for the defendant fraudulently represented and pretended that he was buying the farm for Francis I. duPont, the person to whom alone the defendant wanted to sell, whereas he was in fact buying it for Irenee duPont; that such representation had been made, before the signing of the agreement, to the Harveys who were defendant's agents in negotiating for the sale of the farm, and were also made in their presence and in the presence of the defendant and Mr. Lynam at the time the agreement was signed or immediately thereafter; and that relying upon such false and fraudulent representations the defendant signed the agreement in question. The Court find it impossible to reconcile this defense with the two letters above mentioned, in one of which Mrs. Harvey said to Irenee duPont:

"It makes no difference to us who buys the farm. We have offered it to you people first."

And in the second of which the defendant, speaking through his agent Mrs. Harvey, wrote to Irenee duPont:

"Should you care to take the whole farm then you could manage such to your liking * * * for all information address M. E. J. Harvey."

It is true the Harveys both testified that Chandler insisted during all the negotiations that he would sell to no one but Francis I. duPont, and that Hollingsworth understood this and represented that he was buying for that person, but such attitude on the part of the defendant is negatived, not only by the letters of Mrs. Harvey, his agent, who said "it makes no difference to us who buys the farm," but also by his letter in which he offered to sell the whole farm to Irenee duPont.

The testimony given by the defendant before the Chancellor is so vague and uncertain that not much importance can be attached to it. He did not seem to clearly remember the occasion when the agreement was signed, but did remember that his counsel, Mr. Lynam, was there to advise him, and in his counsel, he testified, he had a "good bit of confidence." He testified that his "memory was all gone, pretty much," and he had but little recollection of what was said and done, or who were present at the time the agreement was signed; he admitted however that he knew he was selling the farm to Hollingsworth and had no objection to it at the time but had afterwards. The defendant, at one point in his testimony, denied that the Harveys had anything to do with the sale of the farm, or had any authority to act for him in the matter, but the Court must assume they had, and that they were his agents in effecting the sale because his counsel concedes they were, and his case is based upon such theory or assumption.

But while little importance can be given to the testimony of the defendant, the Court are of the opinion that much weight should be attached to the two letters because they expressed the thought and feeling of Mrs. Harvey who was the active and effective agent in negotiating for the sale of the farm. When she said to Irenee duPont "it makes no difference to us who buys the farm" the Court feel bound to assume that she expressed the feeling, not only of the Harveys, but also of the defendant so far as he was capable of feeling or thinking about the sale. In addition to the letters to which reference has been made there are other facts disclosed by the testimony which strongly indicate that the defendant was not induced to sign the agreement because of a false

representation made by the complainant. It is undisputed that
the agreement was examined and approved by the Harveys before
it was executed. It was also examined by Mr. Lynam, who was
present for the purpose of advising the defendant respecting the
agreement, and who informed him that it was all right. These
persons, acting as agents and counsel for the defendant knew,
therefore, that the farm was to be sold to the complainant and
made no objection. Mrs. Harvey testified that after the agree-
ment was signed, Mr. Lynam said, "Ralph, who is purchasing
the farm, and I spoke up and said Francis I. duPont, isn't he Mr.
Hollingsworth?" and Mr. Hollingsworth said, "Yes." Mr. Lynam
was a witness in the case but was not interrogated about this
admission. But the significant fact is, that the agreement ex-
pressly provided that the deed should be made to the complainant,
and it is inconceivable that the Harveys and Mr. Lynam would
have advised the defendant to execute it if they knew he was un-
willing to sell the farm to anyone but Francis I. duPont, or that
Mr. Lynam having read the agreement would not have objected
if it was said in his presence that Francis I. duPont was purchasing
the farm. And presumably the defendant knew what he signed,
and would not have agreed to sell the farm to the complainant if
he had determined that no one but Francis I. duPont should have
it. Certainly it is not reasonable to believe that if the Harveys
intended that no one but Francis I. duPont should own the farm,
they would have consented that a deed be made to Hollingsworth,
and have trusted him to convey the property to Francis I. duPont
afterwards. There is nothing in the evidence to show that the
name of Francis I. duPont was mentioned on the occasion when the
agreement was signed except the testimony of the Harveys. They
testified that Hollingsworth agreed, in reply to a question asked
by Mrs. Harvey after the agreement was signed, that Francis I.
duPont was the purchaser. The complainant denies that the name
of Francis I. duPont was mentioned on that occasion, or on any
other occasion when he talked with the Harveys, or either of
them, about the farm except once when he told them he would
try to sell it, or thought he might sell it to such party. And
that even then, the suggestion was made by him and not by them,

his thought being that he would try to sell it to Francis I. until his son advised him to see Irenee.

After a careful consideration of the evidence the Court are clearly satisfied:

1.   That the defendant personally gave but little, if any thought, to the sale of the farm, and that the Harveys conceived and managed the entire business.   According to their testimony Chandler had nothing at all to do with fixing the purchase price, and Mrs. Harvey was to have all the farm should be sold for in excess of twenty thousand dollars.

2.   That the Harveys were very much concerned about the price, but not about the purchaser.

3.   That neither the Harveys, nor their principal, the defendant, had any objection to selling the farm to Hollingsworth at the time the agreement was signed, but had afterwards.

4.   That the probable reason they had objection "afterwards" was because they had information that a larger price, to-wit, forty thousand dollars, could be obtained for the farm if the performance of the agreement could be avoided.

Such being our view of the evidence, it is unnecessary to determine whether Hollingsworth was or was not acting as the agent of Chandler, or to discuss other questions that were argued but which, we think, have no particular bearing on the crucial point in the case, viz. fraud on the part of the complainant. It may be said that if Hollingsworth was acting as the agent of the defendant, or the Harveys, in selling the farm, it was for the sole purpose of obtaining the highest price that was possible.

Being of the opinion that it is not shown by the evidence that the defendant signed the agreement because of a false and fraudulent representation made by the plaintiff that Francis I. duPont was the purchaser of the farm, the Court find no error in the decision and decree of the Chancellor, and the judgment below is affirmed.