WILLIAM T. LYNAM, Executor of the Last Will and Testament of Jesse Chandler, deceased,

*vs.*

SAMUEL M. HARVEY, AND OTHERS. ·

*New Castle, Oct.* 4, 1919.

A written agreement providing that the purchaser should have the "Jesse Chandler farm at Granogue Delaware," for a specified sum at the vendor's death, *held* valid and enforceable.

In an interpleader suit by an executor, a party seeking damages for the testator's breach of contract to convey land cannot testify as to statements by the testator; such proceeding being within the statute providing that, in

actions by or against executors in which judgment may be rendered for or against them, neither party can testify as to statements by the testator, etc.

The wife of a party seeking to recover damages for a testator's breach of contract may testify regarding statements made by the testator, where she was one of his residuary legatees, since her interest was opposed to her husband's and she was within the exception to the statute providing that in actions against executors neither party can testify regarding the testator's statements.

A vendor's oral admission that the purchaser had certain rights under a written contract of sale is not inadmissible under the Statute of Frauds, since the admission was not a new agreement concerning land but an oral recognition of the original contract's binding force.

Where a purchaser sought damages for testator's breach of contract to convey land, testimony that the testator had made a codicil to further protect the purchaser's rights under the contract *held* inadmissible either as proof of a contract relating to land or to explain the unambiguous words of the codicil.

A purchaser's rights to enforce a written agreement under which certain land was to be conveyed to him upon the vendor's death, *held* unaffected by the vendor's subsequent execution of a codicil unless the purchaser had waived his rights under the contract.

A purchaser need not enjoin the vendor from conveying to another, but may stand upon his agreement and sue for damages in case the vendor or his executor makes another conveyance.

The measure of damages for failure to convey real property is the difference between the contract price and the value of the land at the time the purchaser was entitled to claim performance.

Where a vendor conveys to another before the time arrives for performance, the purchaser may sue on the contract without making a tender; nor will failure to show ability to have paid the purchase price at the stipulated time bar a recovery.

A purchaser's allegations that the vendor executed a codicil relating to the land in consideration of the purchaser's waiving his rights under a contract of purchase, *held* to show that the purchaser did not unreservedly waive his rights under the contract, but did so only if the codicil preserved and enforced them.

Where the purchaser's rights were based upon a written agreement to convey and not upon a codicil subsequently executed by the vendor, the fact that the vendor agreed to convey to another after making his codicil does not defeat the purchaser's contract rights under the principle of ademption.

A purchaser recovering damages in an equitable action for the vendor's failure to convey is not entitled to interest except from the date of the decree, and since the damages were unliquidated until that time, the allowance of interest is discretionary with courts of chancery in such cases.

BILL BY AN EXECUTOR FOR INSTRUCTIONS, and to have the residuary legatees under the will interplead with Samuel M. Harvey, who under a contract with the testator claimed part of the proceeds of sale of land of the testator sold by the executor.

Heard on bill, answers, testimony and exhibits. The facts are stated in the opinion of the Chancellor.

*Frank L. Speakman*, for complainant.

*Herbert H. Ward*, for residuary legatees.

*Charles F. Curley*, for Samuel M. Harvey.

THE CHANCELLOR. William T. Lynam, executor of Jesse Chandler, filed his bill in the nature of an interpleader, and for construction of the will of Jesse Chandler, who died December 27, 1917. In his lifetime the testator owned and resided on a farm in Christiana Hundred containing about one hundred and sixty-six acres. By his will made in 1911 he directed that it and all the rest of his property be sold and the proceeds divided. By the third and last codicil dated March 1, 1916, he directed his executor within six months after the death of the testator to convey the farm to Samuel M. Harvey for twenty thousand dollars, and if Harvey should fail to avail himself of the right to purchase the farm, it should be sold by the executor and proceeds applied as indicated.

By an agreement in writing dated November 1, 1916, Jesse Chandler agreed to sell the farm to Ralph Hollingsworth, and after litigation between them this Court on May 8, 1917, decreed that the contract be specifically performed. An appeal was taken and the decree of this Court was affirmed by the Supreme Court on January 21, 1918, after the death of Jesse Chandler. *See post p.* 362, 103 *Atl.* 355. A bill in the nature of a revivor and supplemental bill was filed by Hollinsgworth against the executor and Samuel M. Harvey, and on April 24, 1918, a decree was made requiring the executor to convey to Hollingsworth without prejudice to the rights, if any, which Harvey might have in and to the purchase money. The conveyance was made and the executor received the purchase money, thirty-four thousand, five hundred dollars.

It was alleged that Harvey claims to be entitled to have the difference between twenty thousand dollars and thirty-four thous-

and, five hundred dollars, while the residuary legatees claim other-wise. Instructions and a construction of the will are asked, and Samuel M. Harvey and all of the residuary legatees are made parties defendant, and Harvey and some of the residuary legatees have by answers set up their claims to the fund.

Samuel M. Harvey by his answer claims that on December 26, 1915, he and Chandler made an agreement in writing by which Chandler, in consideration of one hundred dollars, agreed to sell and convey to Harvey the farm for twenty thousand dollars, the conveyance to be effective after Chandler's death. Subsequently, acting on legal advice of their respective counsel, it was agreed between Harvey and Chandler that the above agreement could be better and more conveniently effected by a codicil to Chand-ler's will, and consequently the codicil of March 1, 1916, was made, giving to Harvey the right to purchase the farm for twenty thousand dollars within six months after Chandler's death, this codicil being made as consideration of Harvey's waiver of his rights under the written agreement of December 26, 1915. It was claimed by Harvey that Chandler was legally and in equity bound to pay to Harvey the part of the purchase money of the sale to Hollingsworth in excess of twenty thousand dollars, if Chandler had received it in his life, and that this obligation sur-vived against his estate. Therefore Harvey asked that the portion of the purchase money received by the executor in excess of twenty thousand dollars be paid to him first, because he had a right thereto enforceable against Chandler in his life, and which survived as against his estate; and second, because it apears from the codicil and the surrounding facts to be Chandler's intention that Harvey should own the farm after Chandler's death at a consideration of twenty thousand dollars, and Chandler was at his death the legal owner of the land.

Some of the residuary legatees by their joint answers deny the conclusions of law and fact in Harvey's answer, and claim that the total proceeds of sale became a part of the residuary estate payable to them and Harvey is entitled to none of it. The other residuary legatees have not appeared in response to sub-stituted service by publicaiton.

The agreement of December 26, 1915, is as follows:

"Dec. 26, 1915.

"I Samuel M. Harvey have Rented Jesse Chandler Farm at Granogue Delaware, for the sum of Eight hundred dollars a year. To be paid semi-annually. To take Possession April First, Nineteen hundred and sixteen (1916) just as it stands.

"Jesse Chandler is to put on improvements as I need them Agreeded to fix Horse stables and cow stables.

"Also pay me sixteen dollars per week board and have his privileges. And at his death I am to have the said Farm for Twenty-thousand dollars. One hundred dollars Payed Jesse Chandler as Forfit money.

"Jesse Chandler."

The first question to be decided is whether the contract of December 26, 1915, was valid and enforceable. The residuary legatees claim that it is not, because it fails to describe with certainty the property sold, and the time and manner of performance is undefined. But the subject-matter of the agreement was sufficiently identified by the words "Jesse Chandler Farm at Granogue Delaware." The time of performance was fixed, and the manner of performance would be such as the law would imply in the absence of a statement thereof.

As a preliminary to stating conclusions, it is necessary to dispose of certain questions raised at the hearing as to admissibility of testimony.

The tentative view which was expressed by me during the hearing as to the competency of Harvey to testify as to statements by and transactions with the testator was erroneous, and it is now clear that his testimony was inadmissible. While the proceeding was in effect an interpleader suit brought by the executor, the defendant, Harvey, by his answer, properly availed himself of the opportunity which the suit gave to enforce the rights which he claims to have against the estate, and which as complainant in equity, or plaintiff at law, he could have made the subject-matter of an action against the executor. Harvey seeks here damages for a breach of contract, and the relief which he will get, if successful, is an award of money to be paid by the executor from the assets of the decedent's estate. His interests are those of a party opposite to the interests of the other interpleading defendants, who are beneficiaries of the testator, and so are op-

posite to the estate, and any decree awarded would be against the executor. Therefore, it is within the spirit and letter of the statute which provides that in actions or proceedings by or against executors in which judgment or decree may be rendered for or against them, neither party can testify against the other as to any transaction with, or statement by, the testator. Therefore, none of such testimony has been considered by me in reaching conclusions.

The same objections do not apply to the competency of the wife of Samuel M. Harvey as a witness. She was not incompetent because she is his wife. She is competent to testify to statements by the testator because being one of the residuary legatees her interest was opposed to that of her husband, as it would have been to any one claiming to be a creditor of the testator. Being a party "opposite" to her husband, and having been called by him as a witness, she was competent to testify to the above-mentioned matters, being within the exception of the statute.

Another ground of objection to her testimony related to the character thereof, and it was urged that it related to an interest in land, and not being in writing was not admissible under the Statute of Frauds (§ 2626, *p.* 1270, *Revised Code*). The effect of her testimony, if it had any material bearing on the issues, was that Chandler while he had under consideration the offer of Hollingsworth to purchase the farm, admitted orally that Harvey's rights under the agreement of December 26, 1915, would remain notwithstanding the sale to Hollingsworth. It was not the making of a new agreement concerning land, or the sale thereof, but an oral recognition of the fact that Harvey had rights under the agreement which the sale to Hollingsworth would not affect. But this admission was nothing more than the statement of a legal conclusion. It was not, therefore, within the prohibition of the Statute of Frauds, and besides, is not important evidence.

Objection was made to the testimony of George L. Townsend, Jr., on the ground that it also was excluded by the Statute of Frauds. The effect of his testimony was that Chandler made the codicil to further protect the rights of Harvey under his contract. Such testimony clearly relates to a contract concerning land, or rather was offered to show the purpose of the owner of land in

disposing by will of land which he had theretofore contracted to sell. It is, therefore, inadmissible either as proof of a contract respecting land, or to explain the unambiguous words of the will. Besides, it was not much more than an oral admission by Chandler of his legal obligations to Harvey under the contract of December 26, 1915. The testimony of Townsend was not considered in reaching my conclusions.

The result of these rulings is, that the rights of Harvey are to be determined independent of the oral testimony, and upon the contract and the will.

Independent of any testimony, as to the admission of which objection was taken at the hearing, what were the legal equitable rights of Harvey? In the first place, Chandler by a written paper dated December 26, 1915, and signed by Chandler only, rented his farm to Harvey from April 1, 1916; gave him a right to purchase the farm for twenty thousand dollars after Chandler's death; and acknowledged the receipt from Harvey of one hundred dollars on account of the purchase money. Having found that this writing was sufficiently explicit and certain in its terms to be enforceable, the next consideration is whether the rights of Harvey were diminished by the making of the codicil to Chandler's will, dated March 1, 1916, by which codicil he directed his executor to sell the farm to Harvey for twenty thousand dollars within six months after the testator's death. This limitation of time for performance does not materially alter the right of Harvey, for though no time for performance after the death of Chandler is fixed in the agreement, it is to be implied that he would perform within a reasonable time after Chandler's death, and six months would not be an unreasonable time.

Therefore, Harvey had, after the making of the codicil, the same rights against Chandler to enforce the agreement of sale of December 26, 1915, notwithstanding the execution of the codicil, whether he knew of the making of the codicil or not, unless by some act or declaration he waived such rights. So, too, Harvey would have had a remedy at least for damages if Chandler had conveyed the farm in his lifetime to some one other than to Harvey, and by so doing had made it impossible for Harvey to obtain his right to purchase the farm after Chandler's death.

It follows, further, that Harvey's rights are preserved against the estate of Chandler, who made in his life a binding agreement to sell the farm to Hollingsworth, a judicial decree for the enforcement of which agreement was made in Chandler's life and a conveyance pursuant thereto made by his executor pursuant to a decree in a supplemental suit. Neither does it make a difference that Harvey had knowledge of the making of the agreement by Chandler with Hollingsworth for the sale of the farm. He was not called upon to object thereto.

Although during Chandler's life Harvey could not have enforced a specific performance by Chandler of his agreement to sell, yet Harvey might perhaps have had Chandler enjoined from conveying to Hollingsworth. But Harvey was not bound to take this kind of remedy either during the life of Chandler, or afterwards, and had a right to stand upon his agreement and enforce compensation by damages in case Chandler or his executor sold and conveyed the farm to anyone else.

The measure of his damages would be the difference between the purchase price and the value of the farm at the time when Harvey was entitled to claim performance, viz.: within six months from the death of Chandler. Within that period the farm was conveyed by the executor of Chandler in execution of the decree of the Court of Chancery made in the suit by Hollingsworth to enforce specific performance of his contract made with Chandler. The value of the farm was fixed by the price at which it was sold to Hollingsworth. If Harvey was not in default at the time of the conveyance to Hollingsworth, or had not waived or relinquished any right to enforce his rights under Chandler's agreement of December 26, 1915, then he has a valid claim against the estate of Chandler for fourteen thousand, five hundred dollars, the difference between twenty thousand dollars, the price Harvey should pay, and thirty-four thousand, five hundred dollars; the price obtained by the executor from Hollingsworth.

Was he in default? He was not in default either for not tendering the purchase price or offering to perform before the conveyance to Hollingsworth; for the land was so conveyed within six months from Chandler's death, so that performance to Harvey was thereafter impossible. If a vendor of land sells and conveys

it before the time arrives for performance by the vendee, he is entitled to sue on the contract without making a tender, 3 *Elliott on Contracts*, § 1972; *Lea v. Ennis*, 6 *Houst.* 433; *Lowe v. Harwood*, 139 *Mass.* 133, 29 *N. E.* 538; and his failure to show his ability to pay the purchase money at the time stipulated for performance by him will not be a bar to the suit, *Lowe v. Harwood*, *supra*.

For the residuary legatees it is urged (1) that Harvey waived his rights under the agreement of December 26, 1915, and elected to look to the codicil of March 1, 1916, for the protection of his rights; (2) further, that no new contract was made between Chandler and Harvey, and none arose from the making of the codicil; and (3) the sale to Hollingsworth was an implied revocation of the codicil by the ademption of the subject-matter of the codicil.

(1) As to waiver. This it is urged is found in Harvey's answer in this suit. If it is not there, it can be found nowhere else. In his answer Harvey does say that after being advised by counsel that the agreement of December 26, 1915, could be better effectuated by a suitable provision in Chandler's will, the third codicil was made, "and thereupon in consideration of the execution of the codicil this respondent [Harvey] agreed to waive his rights under the said written agreement," and that it had been agreed between him and Chandler "that the consideration money in excess of said sum of twenty thousand dollars ($20,000.00.) should be received by the said Samuel M. Harvey in lieu of the rights of the said Harvey under the said codicil, which said codicil as aforesaid was duly executed in consideration of the said respondent's waiver of his rights under the said written agreement."

Whatever may be the effect of this part of the answer, in case Harvey was unable to prove the same by admissible testimony, such as oral declarations of the testator, still it is also claimed by the answer that—

"The rights given to this respondent in and by the codicil dated the first day of March, A. D. 1916, were given as the result of a contractual obligation of the said Jesse Chandler to so give."

It was also there claimed that Harvey was entitled to the purchase money in excess of twenty thousand dollars had it been paid to Chandler in his life, and that this right exists against his

estate. From these and other statements in his answer, it is certainly clear that Harvey did not finally and unreservedly waive any right which he had acquired under the agreement of December 26, 1915, which was and still is a valid subsisting agreement binding the estate of Chandler to the extent to which it is now enforceable. At most Harvey waived his rights under the agreement believing that they had been secured to him otherwise, viz.: under the codicil. It is not fair to say he, by his answer, waived his rights under the agreement without also taking into account his further declaration as to his reason for so doing. In other words, it is said that he waived such rights as vendee because the vendor had agreed to more effectually protect them by the codicil, and his opponents then seek to prevent him by artificial though salutary statutory rules of evidence from proving the agreement. A more equitable view is to regard the waiver as qualified upon receiving a more effective agreement, and failing the latter relieve the vendee of the effect of the waiver. Still, aside from these considerations, it does not clearly appear that Harvey by any allegation or admission has waived, or relinquished, his claim to the purchase price in excess of twenty thousand dollars, as his just due under the agreement of December 26, 1915.

There is authority that the contract of December 26, 1915, being in writing it could not be discharged by a parol agreement. "To waive the written contract would be as much a contract about lands as to make it," said Chancellor Ridgely in *Wilkins v. Evans*, 1 *Del. Ch.* 156, 165. This same principle is alluded to by Chancellor Bates in *Maxfield v. Terry*, 4 *Del. Ch.* 618, 629, 630. It was there said,

"It may be conceded that in a suit at law on a written agreement, such a bare parol waiver would not be a bar."

He went on to say, however,

"In equity, upon a bill for specific performance, it seems to be settled that the court will not enforce performance in favor of a party who has clearly abandoned it and consented to its discharge even though by parol only."

The reason assigned is that the jurisdiction is a discretionary one.

In the present proceeding the rights of the parties claiming the fund are in a large sense legal rights which by interpleading

they have been permitted to submit to this Court for the relief of the executor. Still after all is said, the question reverts to the primary one as to the purpose of Harvey in consenting to the sale of the farm to Hollingsworth and the effect thereof on his own rights under the written contract of December 26, 1915. No other conclusion is fair than that, however he may have stated it in his answer, his waiver was qualified and did not constitute an abandonment of his rights under that contract. If so, they are enforceable in this proceeding to the extent of giving him that which he would have gained under the contract, the excess of the proceeds of sale over the price to be paid by him.

(2) It is probably true that no new contract was made between Chandler and Harvey, and that none arose by reason of the making of the codicil. But these considerations are unimportant if Harvey's rights were based on the contract of December 26, 1915.

(3) The principle of ademption, by which it is claimed that the codicil was defeated by the agreement to sell the farm to Hollingsworth, does not apply here. It might have been applicable if Harvey's rights were based on the codicil only. The valid agreement to sell probably gave to the purchaser such rights in equity, and enforceable there against his executor, as would render ineffective the codicil, even though the legal title to the property was in Chandler at his death. But as Harvey's rights are based on the agreement of December 26, 1915, and not on the codicil, except as a confirmation of that agreement, it is not important to pass on the question of ademption.

For the reasons herein stated, the conclusion is that Harvey is entitled to have from the estate of Chandler the portion of the purchase price at which the farm was sold in excess of twenty thousand dollars.

Let a decree be entered accordingly.

After filing the foregoing opinion the solicitors for the respective parties were given an opportunity to be heard as to the form of decree to be entered, at which hearing the solicitor for Samuel M. Harvey claimed interest on the amount found to be due Harvey from the date of the conveyance of the farm in question to Ralph Hollingsworth.

THE CHANCELLOR.    Samuel M. Harvey is not entitled to interest on the sum of fifteen thousand dollars allowed as damages, except from the date of the decree.   His solicitor claimed interest from May 2, 1918, the date of the conveyance to Hollingsworth, on the ground that his right to the money then accrued and interest was damages for the detention from him of the money then due him.   But though the measure of damages was plain, and the rule and method of calculation thereof simple, it was nevertheless unliquidated until the decree is entered.   Besides, in a Court of Chancery the allowance of interest in such cases is discretionary with the Court, except when it is dealing with obligations which by their terms bear interest, or carry interest by custom or otherwise.   Under the circumstances of this case it does not seem equitable to allow interest except from the date of the decree.