## NORRIS MAXFIELD,

### *vs.*

## WILLIAM H. TERRY.

*New Castle, Sept. T. 1873.*

Real estate was purchased by C., under a written agreement with M., that he was to occupy the house at $50 per annum rent, and upon payment to C. of the sum of $450 to receive from C. a conveyance of the property. No time was limited for the payment of the price of the house, but there was an understanding that M. should have three years from the date of the purchase, *Held*, that the agreement was upon sufficient consideration, and, being reduced to writing, was on its face within the statute of frauds ; that, there being sufficient evidence as to the understanding that three

years were given for its performance, the Court is justified in treating that period as a reasonable time for such performance, measured by the assent of the parties. *Held*, also, that such a contract is not a declaration of trust; but an executory contract of sale.

C. previous to selling the property, applied to M. to take it off his hands, pursuant to the contract; but he professed himself unable to do so, and verbally agreed to discharge C. from his obligation longer to hold the property ; and after the agreement for the sale was made again expressed himself as satisfied, and agreed to take his chance of making some arrangement with the purchaser; pursuant to which consent C. sold the property to T. who purchased it with the express understanding that M's rights under the agreement were discharged. *Held*, that this amounted to a clear and unequivocal waiver, on the part of M. of his rights under the contract. *Held*, also, that evidence of the grantee's consent to the sale, and that the other party notified the defendant of such consent, is sufficient to support a defense that the grantee's right under the original contract was discharged.

An equity in lands can only be given away by a release, or something equivalent thereto ; and as a general rule it is doubtful whether a written agreement may be discharged by a bare parol waiver. But in equity the Court will not enforce the specific performance of an agreement in favor of a party who has clearly abandoned it, though by parol only, where such waiver has been acted upon and the relations of the parties changed.

THIS WAS A BILL for the specific performance of a contract for the conveyance of a house and lot situated in the town of New Castle. The property was purchased by Mark M. Cleaver, in October, 1866, for the complainant, under an agreement, of which Cleaver afterwards gave a written memorandum in these words :

NEW CASTLE, Feb. 23, 1867.

*To whom it may concern* :

Having purchased a frame dwelling house and lot of ground in the town of New Castle from Levi Caulk, colored man, for the sum of $450.00, on the 13th day of October, A. D., 1866. and the deed therefor being in my name, I hereby acknowledge to have bought the said property for Norris Maxfield, colored man, of said town,

he having requested me, as his friend, to do the same in order that he might secure the said property when able to pay for it, I having agreed to hold it for him, he agreeing to live in the house and pay me $50.00 per annum rent. When the said Morris Maxfield shall pay me the sum of $450.00 I hereby agree to convey the property to him.

M. M. CLEAVER.

No time was limited in the written memorandum for the payment by Maxfield of the price of the house and lot, but it was understood between the parties that he should have three years from the date of the purchase in October, 1866. Sometime after the purchase, but precisely when does not appear, Maxfield took possession of the property as tenant to Cleaver, and paid him some rent. The bill alleges that he put some additional improvements upon the lot, but of this there is no evidence.

In July, 1869, Cleaver sold and conveyed the premises to the defendant Terry, for the price which he had paid for it, $450.00, and the arrears of rent due from Maxfield, some $40,00. Maxfield was then in possession. The bill charges that at the time of the conveyance to Terry, Maxfield had an equity in the premises, and that Terry purchased with notice of this equity and holds the property subject to it ; that Maxfield has demanded a conveyance by Terry tendering himself ready to reimburse the money paid by Terry, but that the latter refuses to convey. The bill therefore prays a decree for such conveyance.

The answer while admitting that Terry knew of Maxfield's possession of the premises, and that they had been purchased by Cleaver for Maxfield under the agreement set forth in the bill, yet alleges that before, and at the time of his purchase, he was informed by Cleaver that Maxfield, having failed to comply with the agreement,

had forfeited all right under it and that the same was void ; that he had purchased relying on this information and believing that the property was clear of any equity in favor of Maxfield.

Mark M. Cleaver was examined as a witness on behalf of the complainant. Respecting the circumstances under which the sale was made to Terry the witness testified as follows, viz :

To the third cross-interrogatory :—" I did before " conveying the property to the defendant apply to the " complainant to take the property off my hands, paying " me therefor the sum of four hundred and fifty dollars "and the amount of rent then due ; " to which he replied : " I am not able to do it, and have no prospect of being " able to do so," or words to that effect. All I did after this was to ask complainant to release me from the obligation I was under to him, to convey the property to him, in order that I might sell it to some one else: This he did readily consent and agree to, and did expressly relinquish all right to claim a conveyance of the property to him. This was before I had found a purchaser. When I had found one in the person of the defendant, I again asked the complainant, if he could make any arrangements by which he could take the property and pay me for it, and if not I could sell the property to William H. Terry for the same amount I had paid for it, in addition to the rents then due,—he said he was entirely satisfied, and if he should become able to buy the property he had no doubt he could make satisfactory arrangements with the said Terry.

.To the 7th interogatory, the witness replied, " My " dealings were entirely with Howell J. Terry, father of the " defendant. I informed him how I held the house and lot " at the time of the agreement to convey to the said de- " fendant. I informed Howell J. Terry that there had been

"an agreement between myself and Norris Maxfield, under "which agreement I was to convey to Norris Maxfield the "same house and lot at any time within three years from "the date of the purchase, upon his paying me therefor "the sum of four hundred and fifty dollars,—he in the "meantime occupying the house and paying me as rent "the sum of fifty dollars per annum, but that he had re-"leased me from the terms of the contract or agreement, "and expressed himself perfectly satisfied that I should "sell the house to the ,defendant as he was not and "did not expect to be able to take the property and pay "for it according to the terms of our agreement. Then "I said to Mr. Terry that Norris had now no claim upon "me to convey the property to him having released his "claim, as stated above. I cannot say that these are the "identical words used by me, but that is the substance of "it as near as I can remember."

To the 2d cross interrogatory, the witness answered,— "I did before making the said conveyance inform How-"ell J. Terry the father of the defendant that there had "been a verbal agreement between myself and the com-"plainant, but that he, the complainant had failed to com-"ply with his part of the contract in this, that he had not "occupied the house as he had agreed to do, and had not "paid his rent at the times agreed upon, and inasmuch as "he had failed to so comply, and could not then take the "property off my hands as requested by me, and not wish-"ing me as he said to suffer any inconvenience, from hold-"ing it any longer for him, he released me from any "obligations to hold it any longer for him, and consented "that I should convey the house and lot to William H. "Terry, and that the understanding between us should be "considered null and void."

*J. H. Rodney*, for the complainant.

Our claim is that the sale by Cleaver to Terry was

subject to Maxfield's equity. No tender to Terry was necessary, because he refused wholly to convey. No authority is necessary to show that the equity, if it existed against Cleaver, is good against Terry, and may be enforced in this Court. We admit that the purchaser must have notice. The notice proved is of a verbal contract, which is not the contract out of which the equity arose. Notice may be either actual or constructive. In this case, it was a constructive notice. Possession is one of the modes of constructive notice. It is proved that complainant went into possession under the agreement. It matters not whether the purchaser knew of the possession or not. *Taylor vs. Stibbert*, 2 *Ves. Jr.*, 437 ; *Johnston vs. Glancy*, 4 *Blackf.* 94; *Moreland vs. Lemaistre*, 4 *Ib*, 383 ; *Knox vs. Thompson*, 1 *Litt.* (*Ky*), 350 ; *Godfroy vs. Disbrow, Walk. Chanc.* (*Miss.*) 260; *Brown vs. Anderson*, 1 *T. B. Monroe*, (*Ky.*) 198; *Maynor vs. Lewis*, 2 *Ga. Dec.* 205; *Grimston vs. Carter*, 3 *Paige* 421 ; *Kelley vs. Stanbury*, 13 *Ohio*, 408.

The only substantial defense rests upon the claim of waiver under Cleaver's conveyance. This requires a decision upon the question whether a title under a written agreement can be waived by parol. The text writers recognize the principle, but regard it with surprise. Sir Edward Sugden considers that a waiver of a written agreement ought to be in writing. 1 *Sudg. on Vend.* 255 (167); *Brown on Frauds* 440 ; *Kelley vs. Stanbury*, 13 *Ohio*, 436.

Taking a waiver to be admissible, yet it must be such as wholly to dissolve the contract, and place the parties *in statu quo*. These parties cannot be placed *in statu quo*, because Maxfield had made improvements. Further, the waiver must have been intended to dissolve the particular written contract ; yet that was evidently forgotten, and not in Cleaver's mind.

Again, the writing was not really a contract, but a

declaration of trust under which the complainant had a subsisting interest in the land, which could be diverted only by writing. Nothing short of a release will answer to divert an interest in land. If less, it is but an expression of an intention not to insist on a right, which is not binding without a consideration. But the answer does not set up a waiver, but relies upon an alleged forfeiture. The complainant throughout held on to his right, expecting first to get some one else to help him raise the money and afterwards to make terms with the defendant. All he meant was that he would not hold Cleaver responsible, but would, nevertheless, adhere to his equity in the property. With respect to any forfeiture, Maxfield's permitted continued occupancy was a waiver of it.

*Spruance*, for the defendant.

The complainant had no equity even against Cleaver, even without any waiver or relinquishment, the agreement, as alleged, was partly written and partly parol. There was no limit as to time in the paper, but only when subsequently agreed on. The agreement was in two parts. (1,) to convey, and (2,) to demise meanwhile. No demise not in writing is good for more than one year. *Rev. Code*, Ch. 120, sec. 3.

The demise and the obligation to occupy and pay rent was an essential part of the consideration of the promise to convey, and if the former could not be enforced under the contract, there was a partial failure of consideration, and the agreement could not be enforced.

This is not a case of independent covenants contained in the same instruments. This contract is within the statute of frauds. *Rev. Code*, 184, sec. 7. It is required to be in writing, and therefore, any material addition to it by parol is inadmissible.

A purchaser taking title in his own name and paying the purchase money, cannot be required to convey, though employed as an .agent. 2 *Sto. Eq. Jur. sec.* 120-1 *a* ; *Botsford vs. Burr*, 2 *Johns. Ch.* 405 ; *Steere vs. Steere*, 5 *Johns. Ch.* 1.

Then, taking the contract on its face, no time is limited. In such case this Court as well as a court of law would allow a reasonable time. In this case, the lot was held for the complainant two years and nine months. That was a full and reasonable time, and complainant being then applied to, and failing to comply, the Court should hold Cleaver discharged.

Again, the complainant, seeking equity, must show that he has done his duty. But he did not, as agreed, occupy the premises until Cleaver had held them two years. True, he did afterwards occupy it ; but not under the agreement, but for another reason.

We do not deny that this is constructive notice, and affects the purchaser. But against this, we rely on a waiver or discharge. It is well settled that a right arising under a written agreement may be waived. But this case goes beyond waiver, for the complainant has led the purchaser to change his position and is estopped ; and he who seeks equity must do equity.

Terry did not suppose he was buying subject to the equity ; nor did the complainant, or any of the parties, suppose so. The doctrine of estoppel proceeds on the ground of consent or acquiescence ; nor does it matter whether the acquiescence or consent was previously expressed, his expression of it having been the means of leading another party to change his position. 2 *Sto. Eq. Jur. sec.* 1542, 1546, 1541 ; *Maloney vs. Horan*, 53 *Barb.* 29.

With respect to the claim that the parties cannot be

79—DEL. CH. IV.

put in *statu quo*, there having been improvements, that fact makes no difference ; it did not affect his power to relinquish if he chose so to do. Besides, there is no proof of improvements, and no prejudice could be suffered. He has held the property without rent for five .years, and if turned off would still be better off than if he had never entered into possession.

But it is urged that the alleged waiver had not definite reference to the written agreement, because Cleaver did not remember.

In this case there was no trust, no subsisting interest, and therefore the distinction between waiver of right to contract and waiver .of trust does not apply, if there be any such distinction.

*G. B. Rodney*, for the complainant, in reply.

The decision must be confined to the case made by the bill and answer. The argument in defense has departed from the defense specifically set up. The case made is upon the written paper. The evidence relied on and the defense.argued is not upon the paper. There was not, as assumed, any lease for three years ; but an agreement to convey, at first indefinite, and afterwards limited to three years. The defense is that Cleaver told the defendant that complainant had forfeited his equity, (not waived or released,) and that he had consequently purchased without notice. We admit that such an equity would not be enforced against a purchaser for value without notice ; but we insist that Terry had constructive notice, and that is sufficient to affect him.

But admitting, for argument, that a parol waiver is admissible, the complainant did not, as a matter of fact, so discharge the equity. We insist that it is not a contract

of sale, but a declaration of trust. Defendant acknowledges the purchase to be for Maxfield. The consideration, on the part of Maxfield, was to live in the house and pay rent. Then attached Maxfield's interest in the property as *cestui que trust.* Such an interest could not be parted with or divested by parol; certainly not, if the trustee is in a position to coerce or take advantage. *Perry on Trusts,* 684. It was Cleaver's duty to fully inform the *cestui que trust* in these respects and use no undue influence; but this was done under Cleaver's importunity.

Estoppel is a distinct substantive matter of defense which should have been set up. It must have two ingredients, (1). Ignorance in the party setting it up; and (2) fraud or circumvention in the other party, *i. e.*, a fraudulent intent in the party to deceive or lead on the party affected by it,—"*mala fides.*" As to ignorance, if the party knew of the equity or had means to know, he is bound to inquire, and must take the consequences of his negligence. *Storrs vs. Barker,* 6 *Johns. Ch.* 166; *Sto. Eq. Jur., sec.* 1543; 2 *Smith's Lead. Cases,* 742-746-747-768; *Frost vs. Saratoga Mutual Insurance Co.,* 5 *Denio,* 154.

Then the question of fact is, did Maxfield by any act of his induce Terry to buy the property, supposing there was no equity? There must be some act of Maxfield influencing Terry. There is no evidence that Maxfield concealed his title from Terry; nothing which connects them together prior to the purchase. Terry appears in the testimony only in connection with the second interview. It must appear that Terry bought, not on the ground alleged, of forfeiture, but relying on what Maxfield said or did; and being himself in ignorance of such equity. But Terry himself says he took the title on faith of Cleaver's statement that title was forfeited, not on faith of anything said or represented.

THE CHANCELLOR :—

The effect of the transaction between Cleaver and Maxfield, touching the purchase of the property in controversy, was to create a contract for its conveyance by Cleaver to Maxfield in consideration. *first*, that Maxfield should occupy the property prior to its conveyance to him and pay a stipulated rent for it ; and, *second*, that he should repay to Cleaver the purchase money. This agreement was upon sufficient consideration and being reduced to writing was of force within the statute of frauds. There is sufficient evidence to shew that three years were given to Maxfield for the performance of his part of the contract, and the Court is justified in treating that period as the limit to his right to have a conveyance, for, although not a part of the written agreement, it may be taken as a reasonable time measured by the assent of the parties. Within the three years then, commencing in October, 1866, it may be considered that Maxfield had an equity to a conveyance upon payment or tender of the purchase money with any arrears of rent. But it appears from the testimony of Cleaver that before selling the property to Terry, he applied to Maxfield to take it off his hands, pursuant to the contract. Maxfield professed himself unable to do so, and without any prospect of becoming able. Thereupon Cleaver requested to be discharged from his obligation longer to hold the property and that he might be at liberty to sell it to some one else. Maxfield did not insist, as he might have done, upon the unexpired portion of the three years given him to fulfill the agreement, but consented to Cleaver's proposal to sell the property to some one else, and to sell it clear of Maxfield's right, for a sale clear of the agreement was evidently what the parties meant. Again, after the purchaser was found, Cleaver saw Maxfield, and gave him another opportunity to take the property, but proposing that if he, Maxfield, could not do so, Terry would take it, and meet his obligations by paying the purchase money

and rent in arrear. With this proposal Maxfield expressed himself as satisfied, saying that he would take his chance of making some arrangement with Terry. Pursuant to the consent thus given, Cleaver sold the property to Terry, and it was purchased by Terry with the express information that Maxfield's rights under the agreement were discharged.

Now, upon this evidence, there was, on the part of Maxfield, a clear and unequivocal waiver of his right to a conveyance under the agreement. The case is quite within the rule as cited by the complainant's counsel from the Master of the Roll's opinion, in *Robinson vs. Paige*, 3 *Russ.* 120, that the waiver must amount to a dissolution of the contract placing the parties in *statu quo.* By this is meant that they be placed in their former situation as to the obligations of the contract.

But the question is raised whether a written agreement can be discharged by a parol waiver.

There might be doubt whether a bare parol waiver, that is one which has not been acted upon, nor caused any change in the position of the parties, is sufficient to discharge a written agreement; as, if the title still remained in Cleaver, and this were a bill filed against him for a conveyance, and his defense were that at some time Maxfield had expressed his intention not to insist upon his right, but without canceling or surrendering the written agreement, and without Cleaver's having acted under such declaration of Maxfield. Such is the case put by Sir William Grant in *Stackhouse vs. Barnston*, 10 *Ves. Jr.* 465, cited in argument, where he says,—" A "waiver is nothing, unless it amount to a release. It is "by a release, or something equivalent, only, that an "equitable demand can be given away. A mere waiver "signifies nothing more than an expression of inten-

"tion not to insist upon the right; which in equity "will not bar the right any more than at law "accord without satisfaction would be a plea." It may be conceded that, in a suit at law on a written agreement, such a bare parol waiver would not be bar. In equity, upon a bill for specific performance, it seems to be settled that the Court will not enforce performance in favor of a party who has clearly abandoned it, and consented to its discharge, even though by parol only. The propriety of the rule appears to have been doubted by Lord Hardwicke in 2 *Eq. Cas. Abr.* 33, and by Mr. Sugden, in his work on Vendors and Purchasers. But it is fully established. The cases are collected in 1 *Sugd. on Vend. Ch.* 3, *sec.* 9. The rule proceeds upon the ground that the exercise of this jurisdiction is a discretionary one to be exercised subject to all the equities of the particular case, and that it will not be exercised to relieve a party who has clearly and unequivocally waived or abandoned his right.

The present case goes beyond that of a bare parol waiver just referred to. Maxfield's consent, given for the sale of the property to another purchaser, was acted upon. In consequence of it Cleaver and Terry were led to alter their situation, and must suffer prejudice if Maxfield be now permitted to retract his consent to the sale, and to hold the property charged with his equity. To enforce the specific performance under such circumstances would be grossly inequitable, and would be contrary to the principle which regulates the exercise of this jurisdiction. That principle is that a specific performance of a contract will not be decreed where, under the circumstances, such a decree would work manifest injustice between the parties: But in such case the complainant will be left to his remedy at law. To this extent the jurisdiction for specific performance is discretionary. It was so held upon a full examination of the subject in *Godwin vs Collins* ; a case decided in Kent County in 1868, and affirmed on appeal.*

---

* 3 Del. Ch. 189.

The result is that inasmuch as Maxfield's consent to the sale made to Terry has been acted upon, and the parties have become involved under it, and in reliance upon the agreement having been discharged, so that to enforce it would now be inequitable, a court of equity will give to the waiver all the effect of a release, and refuse to interfere.

Even at law, in an action for damages against Cleaver for a breach of his agreement to convey, the facts proved would be a defense. For Cleaver having disabled himself from fulfilling the agreement, with Maxfield's express consent, would not be liable for the breach of it ; under the maxim, "*volenti non fit injuria.*"

It remains to notice two special grounds taken by the complainant's counsel against the defense of waiver.

*First.* It was argued that this agreement is more than a mere contract of sale, that it is a declaration of trust, and vested in Maxfield immediately an equitable interest in the property, such as could not be parted with or divested by parol. I am of opinion, however, that this memorandum amounts to a contract of sale. I look to the substance and effect of the transaction. Cleaver bought the property, took the title, and paid the purchase money. Maxfield paid nothing. There was therefore no resulting trust to Maxfield, raised by law out of the transaction ; and no present vested interest is, upon fair construction, expressed, or implied by the written agreement. It is true that Cleaver in terms acknowledges that he has bought the property for Maxfield, and is to hold it for him—not however that he is to hold it *as a trustee for Maxfield*, so as to vest in him a present interest in it before he had reimbursed a dollar of the purchase money. On the contrary what Cleaver meant by holding the property for Maxfield is shown by the concluding clause, viz.: "when the said

"Norris Maxfield shall pay me the sum of $450.00, I hereby "agree to convey the property to him." This is the language of an executory contract of sale, and not of a declaration of trust. But even if Maxfield had taken under the agreement a present equitable interest, such as ordinarily could only be assigned or released by writing, still, the question would remain, whether his consent to the sale made to Terry and Terry's purchase, in consequence of such consent, would not raise in Terry an equity sufficient to protect him against Maxfield's claim as against Terry. Maxfield would in that view be equitably estopped from setting up any interest in the premises which he could be supposed to have had. The case however does not rest on that point, but upon the ground that this was but a contract of sale, and the right under it was wholly discharged by Maxfield's consent, acted upon, to have the property sold.

A *second* special ground, taken by the complainant's counsel, was that the defense of waiver, taken at the bar, is not consistent with the case made by the answer, which was that Terry purchased the property upon the information by Cleaver, that Maxfield had *forfeited* his right by a failure to comply with the agreement, not that he had *voluntarily abandoned* it. But the substance of the defense made by the answer is this, that Terry purchased, upon information by Cleaver and belief that Maxfield's right under the agreement had been discharged, or, in the words of the answer, "that the same was null and void," and that he would take a title under Cleaver's deed "clear "of any claim on the part of Maxfield." The further statement in the answer that Terry understood from Cleaver that Maxfield had "forfeited" his right seems to me to be but circumstantial, and not of the substance of the issue. I think therefore that the evidence as to Maxfield's consent to the sale and that Cleaver informed Terry, as he testifies, of such consent, supports the main

issue, viz. that Maxfield's right was discharged. If, by the introduction of this evidence, under the state of the pleadings, the complainant could have suffered any surprise, that might be taken into consideration by the Court, but it is the complainant himself who has introduced Cleaver's testimony, and made it a part of the cause.

Again, in the argument for the complainant, stress was laid upon the fact that Terry bought the property with the knowledge that Maxfield held possession of it. It is true that possession is constructive notice to a purchaser of any equity existing in the party holding possession ; and, in this case, Maxfield's possession and Terry's knowledge of it might have protected the right or equity of Maxfield had he not voluntarily abandoned it. But the effect of Maxfield's possession, as constructive notice of his right, is countervailed by his own relinquishment of the right and consent to the sale made to Terry ; and the fact, that Terry purchased under a waiver by Maxfield of his equity, places him on, at least, an equal footing with a purchaser for value without notice of any equity. Indeed, his position as a purchaser is, in a court of equity, stronger than that of an ordinary purchaser without notice, for Maxfield's consent and Cleaver's information that Maxfield's right was discharged, afforded a stronger ground for a purchaser's confidence that he was getting a good title than an ordinary purchaser without notice would have.

I have examined the case of *Kelly vs Stanberry*, cited from 13 *Ohio Rep.* 408. There a purchaser was put into possession without a deed and executed a mortgage to the purchaser for the purchase money. Afterwards the vendor sold and conveyed his legal title to a third person who stealthily gained possession in the absence of the first purchaser. On ejectment brought, one of the defenses was that the first purchaser had at some time by parol agreed to give up the land to the vendor. But the difference be-

tween that case and this, is that there the alleged waiver was not acted upon, had no influence upon the vendor or his subsequent purchaser and was therefore, as the Court say, without consideration. There was not in that case anything to raise an equity in favor of the second pur-chaser, as there is here in favor of Terry, but on the contrary the second sale in that case was a gross fraud and so treated by the Court.

Looking at all the circumstances of the case, I think that Maxfield by his voluntary consent to this sale has lost, as against the purchaser, whatever equity he could have had, under the agreement with Cleaver, whether the agreement be considered a contract of sale, or a declaration of trust.

I cannot therefore decree a specific performance of this agreement, and must dismiss the bill with costs.