ALBERT G. GLUCKMAN,

*vs.*

MARK B. HOLZMAN and AIMEE B. HOLZMAN.

*New Castle, February* 26, 1947.

*Leslie H. Gluckman, for complainant.*

*James R. Morford* and *Morton E. Evans,* of the firm of Marvel & Morford, and *Thomas Muncy Keith, Leighton S. Dorsey,* and *John E. Lewis,* of the firm of Smith & Keith, for defendants.

SEITZ, Vice-Chancellor: I am required to determine at the demurrer stage whether certain oral evidence would

be rejected at the final hearing because of the parol evidence rule.

Since this matter arises on demurrer, the material factual allegations of the bill are taken to be true. These allegations will be summarized.

Both the complainant Albert G. Gluckman and the defendant Mark B. Holzman are medical doctors practicing in New Castle County, Delaware. The defendant Aimee B. Holzman is the wife of the defendant Mark B. Holzman. Reference to "defendant" herein is intended to refer to Dr. Mark B. Holzman.

On June 2, 1946, the complainant and the defendants executed the following agreement:

"WITNESSETH: The parties hereto for the considerations hereinafter mentioned, covenant and agree as follows:

"(1)  Parties of the first part hereby lease to the party of the second part the physicians offices at 1700 Washington Street, Wilmington, Delaware, at the rental of Fifty Dollars ($50.00) per month, beginning January 7, 1946. This rental includes heat, use of equipment and waiting room, but does not include electric light, janitor service or telephone service, which are to be paid for equally by the parties.

"(2)  Dr. Holzman shall have the use of the offices during the morning hours, and Dr. Gluckman shall have the use of the offices thereafter. The office hours of Dr. Gluckman shall commence at 2:30 P. M.

"(3)  The rental of Fifty Dollars ($50.00) per month on the above basis shall continue from month to month until Dr. Holzman gives up the practice of medicine in Delaware, at which time the rental shall become Seventy-Five Dollars ($75.00) per month for the exclusive use by Dr. Gluckman of the aforesaid offices. This rental shall not include the furniture and equipment of the offices except such as Dr. Holzman chooses to leave.

"(4)  The rental of Seventy Five Dollars ($75.00) per month shall start from the time Dr. Holzman gives up his practice, and shall continue for a three year term from that time.

"(5)  Dr. Gluckman shall pay to Dr. Holzman as good will, the sum of $900.00 a year for three years, or $2500.00 in cash, which payments shall start at the time Dr. Holzman gives up practice.

"(6)   Dr. Holzman agrees that upon the payment to him of the good will, either by installment or in full, he will agree not to re-engage in practice in New Castle County, Delaware, for three years from that date.

"(7)   In further consideration of the sum of One Dollar ($1.00) by the party of the second part to the parties of the first part in hand, paid, receipt whereof is hereby acknowledged, the party of the second part may purchase the property wherein the said offices are located, known as 1700 Washington Street, Wilmington, Delaware, at any time within the said three year period from the time the first rental of Seventy Five Dollars ($75.00) is paid and the first installment on good will is paid, upon the payment of $15,000.00 to the parties of the first part.   If so purchased, a warranty deed with release of dower will be given to the party of the second part by the parties of the first part, their heirs or assigns."

Complainant commenced performance of the agreement by paying rent and occupying the office in accordance with the agreement and has continued performance thereof.

The bill then contains the following allegation which constitutes what the parties seem to think is the basis of this struggle in so far as the parol evidence rule is concerned:

"(4)   At the time the aforesaid agreement was entered into, and as a means of inducing complainant to enter into said agreement, respondent Mark B. Holzman promised and agreed to give up his practice of medicine in May or June, 1946 and not to re-engage in said practice anywhere in New Castle County, Delaware for at least three years from May or June, 1946."

It is alleged that as a result of the quoted promise and agreement on the part of the defendant, complainant was led to enter into the agreement and went to considerable expense and otherwise acted in reliance upon the oral promise.   Complainant avers that he would not have entered into the agreement if he had not relied on the defendant's oral promise to retire from the practice of medicine in May or June of 1946, and his further promise to sell the property located at 1700 Washington Street, Wilmington, Delaware.

Complainant avers that the defendant continued to engage in the practice of medicine in Wilmington, New Castle County, Delaware after June 30, 1946, and is at the present time engaged in such practice at 1700 Washington Street. The bill also alleges facts which indicate that defendant owns the property known as 1700 Washington Street, and that complainant has done everything within his power to complete the performance of the agreement by sending notice of his intention to make the payments for good will provided for in the agreement, and by offering defendant the sum of $15,000, which represents the purchase price of the property known as 1700 Washington Street. The bill avers that the defendant refused the various tenders made by the complainant in an effort to effectuate the provisions of the agreement with respect to the purchase of the good will and the Washington Street property.

Complainant prays, *inter alia*:

"(D)    That a permanent injunction issue compelling respondents to specifically perform their agreement by conveying title to the above described property to complainant in accordance with the terms of said agreement."

The defendants demurred to the bill of complaint on several grounds, but there are only two which require consideration, namely:

(1)    That the oral promise sought to be specifically enforced relates to a supposed contract or sale of lands and is unenforceable by reason of our statute of frauds (*Revised Code of Delaware*, 1935, *Paragraph* 3106), and that the alleged contract is indivisible in respect of its several terms and conditions; and

(2)    That the oral promise sought to be specifically enforced is unenforceable and incapable of proof because of the parol evidence rule.

I shall consider whether the bill is demurrable because of the parol evidence rule.

Complainant contends in substance that the oral promise and agreement of the defendant Holzman that he would give up the practice of medicine in May or June, 1946 and not re-engage in said practice anywhere in New Castle County, Delaware, for at least three years from May or June, 1946, if admitted in evidence, would "not vary or contradict the written words of the contract, but will aid the Court in interpreting their correct meaning." Defendants on the other hand take the position that the agreement is clear and unambiguous and requires no use of oral testimony to clarify its meaning, and that any oral testimony such as that of the nature alleged would vary its terms rather than explain them and would thereby constitute a violation of the parol evidence rule.

In approaching the problem of construction, it will be salutary to keep in mind the penetrating observations of Judge Learned Hand in *Eustis Mining Co. v. Beer, Sondheimer & Co., Inc., (D.C.)* 239 *F.* 976, 985:

"* * * All the attendant facts constituting the setting of a contract are admissible, so long as they are helpful; the extent of their assistance depends upon the different meanings which the language itself will let in. Hence we may say, truly perhaps, that, if the language is not ambiguous, no evidence is admissible, meaning no more than that it could not control the sense, if we did let it in; indeed, it might 'contradict' the contract—that is, the actual words should be remembered to have a higher probative value, when explicit, than can safely be drawn by inference from surroundings. Yet, as all language will bear some different meanings, some evidence is always admissible; the line of exclusion depends on how far the words will stretch, and how alien is the intent they are asked to include." See also *IX Wigmore on Evidence,* (Third Ed.) § 2400.

Let us examine the provisions of the written agreement which involve Dr. Holzman's giving up the practice of medicine. Complainant's rent is to be $50 per month "until Dr. Holzman gives up the practice of medicine in Delaware" at which time it becomes $75 per month with the exclusive use of the office (Par. 3). The $75 monthly rental continues for three years "from the time Dr. Holzman gives up his practice" (Par. 4).

Complainant must pay Dr. Holzman, as good will, $900 a year for three years or $2,500 in cash, "which payments shall start at the time Dr. Holzman gives up practice" (Par. 5). Upon being paid for the good will Dr. Holzman agreed not to practice in New Castle County, Delaware, for three years (Par. 6). Complainant was given an option to purchase the Washington Street property at any time within three years after the happening of events which take place when Dr. Holzman gives up practice (Par. 7).

Thus, it may be seen that all the provisions of the written agreement except the first two are dependent for their efficacy upon Dr. Holzman's giving up the practice of medicine. Complainant has added an allegation that Dr. Holzman orally promised to give up practice in May or June, 1946. Apparently, it is this allegation alone which has caused defendant to demur on the ground that evidence of such a promise would violate the parol evidence rule.

Both parties have directed their fire largely toward the alleged oral promise and its possible admissibility at a final hearing and by so doing have, in my opinion, tended to obscure the real issue. The real issue would seem to be whether the provisions dealing with defendant's giving up practice are sufficiently ambiguous as to time of performance to permit of oral proof in aid of construction. This could be so even though no oral promise as to performance had been alleged. Since this is the real problem, I shall discuss it as though no oral promise had been alleged, and thereafter I shall consider the significance, if any, of the alleged oral promise.

Should it be said that the provisions of the written contract involving Dr. Holzman's giving up practice are so clear in meaning that no oral testimony will be permitted in aid of construction?

It is quite apparent that all the provisions in question make defendant's giving up practice a condition precedent

to the operation of the last five paragraphs of the agreement. Both parties seem to agree that we are here dealing with language which creates a condition precedent. The division of opinion between complainant and defendants takes place on the meaning of this language of condition. Defendant argues in effect that the language clearly indicates that the time of performance of the condition is exclusively within the discretion of the defendant Holzman, and that the language of the written instrument so indicates beyond any need for oral testimony. Under this construction, the parties would be said to have consciously incorporated the time of performance of the condition into the written contract itself and, therefore, oral testimony would not be admissible to show some other agreement as to the time of performance of the condition. In other words, the court would apply the parol evidence rule. I agree that the foregoing is one possible construction of the language with which we are here concerned.

A second construction of the language dealing with the giving up of practice by defendant is reasonably possible. Under this construction, it could be said that the language is only language of condition and does not deal at all with the time of performance of the designated event which constitutes the condition. Since the happening of the designated event, to wit, giving up practice, is a condition precedent and since the condition is construed to be silent on the time for performance—the power to perform being exclusively within the province of defendant—the court would apply the rule that where no time is fixed for the performance of a condition precedent, it will be presumed that it is to be performed within a reasonable time. 17 *C.J.S., Contracts,* § 503a; *Maxfield v. Terry,* 4 *Del.Ch.* 618; see also *Tull v. Smith, ante p.* 347, 50 *A.* 2d 908.

We have then at least two possible constructions of these provisions. One, that the written contract explicitly deals with the time of performance of the condition precedent. Two, that the written contract is silent as to the time

of performance of the condition precedent. An examination of the agreement alone leaves substantial doubt in my mind as to which construction should be adopted. Thus, it might be said that the written provisions should be understood as giving the defendant the unfettered right to determine the time when he will give up practice because if it had been intended otherwise, such an important point would have been spelled out in the written contract. Akin to this point would be the argument that if the parties orally agreed that the defendant would give up practice in May or June, 1946, why was it not made a part of the written agreement. The parties had this very point in mind, yet they did not see fit to incorporate it into the written agreement. These points have much to recommend them.

However, it might well be argued that the written contract when read as a whole gives the impression that the parties certainly contemplated that Dr. Holzman would give up practice in a relatively short period of time. For instance, the written agreement has no provision as to when the lease shall terminate in the event the other provisions fail to become operative through defendant's giving up practice. Was the complainant to be completely at the mercy of defendant in this respect? The fact that the point is not covered in the written agreement could be used as a basis for arguing that the parties were not interested in that eventuality because they knew that in a very short time after the execution of the agreement, the provisions conditioned upon defendant's giving up practice would come into play.

It could be argued also that the apparently mandatory provision that complainant is to pay the defendant $2,500 in cash (or three $900 yearly payments) when the defendant gives up practice is a further indication that the parties did not contemplate that the written agreement gave defendant the unrestricted right to determine when he would give up practice. I say this because a long lapse of time between the execution of the contract and a realization of the

benefits of the good will might well deprive complainant of any benefit. If the written agreement is construed as defendant would have it, the agreement would give to defendant the exclusive and unrestricted right to require the payment for the good will when he saw fit to give up the practice of medicine—no matter when this might be.

It must be pointed out that I have done no more than state some of the substantial arguments which could be based on a consideration of the provisions of the written agreement alone. Various parts of the written agreement can be cited in support of the construction relied on by each party thereto. Such being the case, it is necessary to consider the circumstances surrounding the execution of the written agreement to determine which argument is more persuasive. As Mr. Williston has aptly said (3 *Williston on Contracts* (*Revised Ed.*) § 610):

"* * * the court will consider the characterizing circumstances that surround the execution of a contract and where the terms are still not clear the court will hear oral testimony 'to ascertain the intent of the parties as expressed by the language used.'"

It is my conclusion then that under the circumstances of this case the court should consider evidence which might tend to clarify the intent of the parties with respect to the provisions in question. This evidence would properly include such testimony as complainant could produce in support of his allegation that the defendant Mark Holzman promised and agreed to give up his practice of medicine in May or June of 1946. Evidence of the oral agreement, if available, would not be used to show fraud in the inducement because complainant in his brief has stated that he does not rely on fraud. Moreover, it could not under the circumstances be used as a basis for a finding that it was an oral term of an otherwise written agreement. However, should the court construe the provisions in question to be silent on the time of the performance of the condition, then the law would presume performance of the condition was intended within a reasonable time. The evidence of the oral agree-

ment would then be evidence of what the parties considered would be a reasonable time for performance of the condition. *Maxfield v. Terry, supra; 32 C.J.S., Evidence,* § 853.

Oral evidence, if available, will be received to aid the court in determining whether or not the parties should be said to have contracted with respect to the time of performance of the condition precedent by the use of the language employed to create the condition itself. The significance of the oral promise as to the time of performance must await the determination of the construction problem posed by the written agreement.

In view of my approach to this problem, I do not see that any question of the application of the statute of frauds is now involved. The demurrer is, therefore, overruled.

An order accordingly will be advised.