ALBERT G. GLUCKMAN,

*vs.*

MARK B. HOLZMAN and AIMEE B. HOLZMAN.

*New Castle, May 23, 1947.*

*Morris Cohen,* of the firm of Cohen & Cohen, and *Leslie H. Gluckman,* for complainant.

*James R. Morford* and *Morton E. Evans,* of the firm of

Marvel and Morford, and *Thomas Muncy Keith, Leighton S. Dorsey,* and *John E. Lewis,* (of the firm of Smith & Keith), for defendants.

SEITZ, Vice-Chancellor: This is the determination of a problem of construction posed by a written lease containing an option to purchase, and supplemented by oral testimony as to intention.

A more elaborate statement of this case may be found in the opinion of this court disposing of a demurrer to the bill, see *Gluckman v. Holzman,* 29 *Del. Ch.* 458, 51 *A.* 2d 487, 491. I shall set forth here only such facts as I deem necessary to present an adequate picture of the problem now involved.

The complainant and defendant are both medical doctors. The complainant leased a portion of certain premises owned by the defendant. The written lease provided that the option to purchase the premises, as well as certain other substantial rights and obligations, should not arise "until Dr. Holzman [the defendant] gives up the practice of medicine in Delaware." The complainant's bill prayed, inter alia, for specific performance of the option provision of the agreement, asserting that the defendant agreed to give up the practice of medicine in about five or six months after he executed the agreement, but that he had not done so although the designated period of time had elapsed.

This court held at the demurrer stage that the quoted language, as well as other language of the same import, constituted a condition precedent, and held further that such language was ambiguous as to the time of performance. The demurrer was overruled so that oral evidence as to the meaning of the retirement provisions could be received. The problem here presented can best be understood by quoting the conclusion of the court in disposing of the demurrer:

"It is my conclusion then that under the circumstances of this case the court should consider evidence which might tend to clarify

the intent of the parties with respect to the [retirement] provisions in question. This evidence would properly include such testimony as complainant could produce in support of his allegation that the defendant Mark Holzman promised and agreed to give up his practice of medicine in May or June of 1946. Evidence of the oral agreement, if available, would not be used to show fraud in the inducement because complainant in his brief has stated that he does not rely on fraud. Moreover, it could not under the circumstances be used as a basis for a finding that it was an oral term of an otherwise written agreement. However, should the court construe the provisions in question to be silent on the time of the performance of the condition, then the law would presume performance of the condition was intended within a reasonable time. The evidence of the oral agreement would then be evidence of what the parties considered would be a reasonable time for performance of the condition. *Maxfield v. Terry, supra* [4 *Del. Ch.* 618]; 32 *C. J. S. Evidence*, § 853."

The court heard a great amount of testimony in aid of the specific problem of construction presented, namely, whether the language of condition left the time for performance thereof exclusively within the discretion of the defendant, or whether the language left untouched the time for performance, in which event the court would imply a reasonable time for performance (retirement from practice of medicine).

What does the oral testimony show with respect to this problem? This question can be answered by quoting at length from certain testimony introduced by both parties.

The complainant testified on direct examination as follows:

"Q. Did your brother Leslie make some statement to him [defendant] at that time?

"A. Well, Leslie was taking some notes down at the time as to the terms of the contract, so that he could make it legal, and he said, 'What date shall I put in, May or June of 1946?'

"And Dr. Holzman said, 'Oh, don't put any date in.' He said, 'I am going to leave before May, perhaps, but certainly not after June.' "

On cross-examination, the complainant once again in-

dicated in the following language that a specific retirement date was intentionally omitted from the written agreement:

"Q. Then Leslie said, you testified, 'What date shall I put in the contract?' Is that verbatim also?

"A. He said, 'Shall, I put in, then, May or June for your retirement?'

"Q. Yes.

"A. Presumably having counted four or five months to be May or June.

"And he said, 'Oh, don't put anything in'. He said, 'I may leave much earlier than May, but certainly not after June.'

"Q. I see. So Leslie asked Dr. Holzman whether he should put a specific term in the contract relating to the date of retirement?

"A. That's right.

"Q. And Dr. Holzman said not to put any date in?

"A. That's right.

"Q. And no date was put in the contract?

"A. That's right.

"Q. You understand when you signed the contract that there was no date in the contract, didn't you?

"A. I understand that to be legal.

"Q. I didn't ask you that question. Did you understand when you signed the contract that there was no date in it for Dr. Holzman's retirement?

"A. That's right.

\* \* \* \* \*

"By Mr. Morford:

"Q. You also know that your attorney had inquired about a specific date to put in the contract, and Dr. Holzman had said not to put any date in the contract. Is that right?

"A. That's right."

Complainant's brother, an attorney, drew the agree-

ment. When testifying on direct examination on behalf of complainant, he gave the following version of this matter:

"I also suggested to him [the defendant]—I said, 'What about a date for your retirement? What date should we put in there?'

"And he said, 'Well, don't put any date in. I don't know just exactly when it will be, but it may be before May—May or June, but * * *'—he may have said May, or he may have said June—but he did say, 'I may leave here before that time.'

"That was the reason I didn't press the point to put that in there. It was definitely understood between us at the time that that was to be the time limit for the retirement.

"Q. That what was to be the time limit for the retirement?

"A. The summer of 1946, some time in the summer—May or June, was the figures that he had given. He was not specific or definite as to any particular date, but—

"Q. Did you ask, 'What date shall I put in the contract?'

"A. I certainly did.

"Q. And the response to that was what?

"A. Well, to the effect that he didn't want to put any specific date in the contract itself, and he gave as a reason that he might leave here before that time."

The same witness testified on cross-examination as follows:

"Q. So there was some conversation, then, when you took down those notes and before you drew the contract about the specific date of retirement?

"A. Yes, that's right. Not about the specific date of retirement, but about the specific time of retirement.

"Q. You mean an outside time, a time within which he might retire?

"A. The tenor of it was that it was to be in a short while, and in the summer. That was the impression he conveyed—the coming summer.

"Q. And you made the suggestion, I assume, that the contract contain a specific outside date?

"A. That I did, but I didn't press it. He didn't want it in there and I didn't press it.

"Q. What did you suggest as the outside date?

"A. Well, I think I suggested June.

"Q. June 30?

"A. No, I didn't say any date.

"Q. That he retire by the month of June, 1946?

"A. Well, I don't think I had formulated any definite sentence. I just simply said something about the date of June being—

"Q. Then you did suggest June as the date to be in the contract as the date for Dr. Holzman's retirement?

"A. Yes, I asked him what date we could put in as the date of his retirement.

"Q. You suggested June?

"A. Well, I don't think I suggested June. It may have been May, or it may have been neither.

"Q. And Dr. Holzman refused?

"A. He refused, yes. It wasn't a question of my pressing it on him and his refusing it; I just suggested it and he said no. We didn't discuss that any further; he said, 'No, let's not put it in there; I may go before May'."

The defendant, testifying on direct examination, stated:

"Q. Well, now, will you relate again and fully—I think you have partly covered it—your conversation with Leslie Gluckman and with Dr. Albert Gluckman on the occasion when Albert brought Leslie Gluckman in.

"A. Well, he was making those notes. He said, 'I guess we had better have a contract on this,' and he wrote these notes out, and it was he that suggested—it is perfectly true—he says that contract was suggested by him—the only thing he suggested to me was that it should be made in June, and it should be a stated period, and I told him, 'Very frankly I can't make a stated period because I am not retiring as yet.'"

At a subsequent stage in his direct examination, the defendant said:

"THE WITNESS: The conversation was this: I had promised to retire, and he said, 'Shall we make it in June?'

"And I said, 'Oh, no, no. I can't make it in June.' And then that settled that."

The quoted testimony indicates that the insertion of a provision fixing a definite date for the defendant to give up the practice of medicine (other than at his own pleasure) was discussed prior to the execution of the agreement. And of the utmost importance, it indicates that the defendant refused to permit the insertion of such a provision in the written agreement. In the light of this undisputed testimony introduced by both parties, should this court conclude that the parties overlooked fixing a time for retirement, with the consequence that it might imply a provision requiring performance within a reasonable time? I think not.

Courts of other states have said on numerous occasions that they will be careful not to imply a term where the contract is intentionally silent as to such term. See *King, Jr., v. Leighton,* 100 *N.Y.* 386, 3 *N.E.* 594; *Robinson v. Hayes' Estate,* 207 *App. Div.* 718, 202 *N.Y.S.* 732, affirmed 239 *N.Y.* 512, 147 *N.E.* 175; *United States Building & Loan Ass'n. v. Salisbury,* 217 *Cal.* 35, 17 *P.2d* 140; 17 *C.J.S., Contracts,* § 328; 12 *Am.Jur., Contracts,* § 239.

Even more explicitly applicable to this case is the statement of the New York Court of Appeals in *Genet v. President of Delaware & H. Canal Co.,* 136 *N.Y.* 593, 32 *N.E.* 1078, 1082, 19 *L.R.A.* 127, where it was said "that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it."

The quoted testimony shows beyond doubt that the written agreement was *intentionally* silent as to a time for performance, other than such time as the defendant should

see fit to give up the practice of medicine. Moreover, since attention was definitely called to the possibility of inserting a specific time for retirement (other than at defendant's will), and since it was rejected by defendant, this court obviously cannot assume that it would have been made in this case. The almost necessary consequence of the quoted testimony is a construction of the retirement provisions which leaves the decision within the unrestricted discretion of the defendant.

Complainant emphasizes that there is evidence which, if believed, would indicate that the defendant promised to retire within five or six months from the date of the execution of the written agreement. The defendant testified to the contrary. However, as is indicated by this court's opinion on demurrer, such a promise can only be used as evidence of what would have been a reasonable time for performance in the event the provisions in question were construed to be unintentionally silent as to the time when the defendant was to retire. Since I have concluded that the provisions were intentionally silent, with the result that performance within a reasonable time cannot be implied, it follows that there is no necessity for determining whether this promise was in fact made. Moreover, evidence of the promise could not be considered as the basis for recognizing it as an independent oral term of an otherwise written agreement since, as complainant recognizes, evidence offered for that purpose would violate the statute of frauds. See *Crockett v. Green*, 3 *Del.Ch.* 466.

On the basis of the evidence, I conclude that the provisions pertaining to retirement must be construed as giving the defendant the unrestricted right to determine when he will give up the practice of medicine. Since he has not done so up to this time, the prayers of the bill must be denied.

It is not necessary to decide whether, or under what circumstances, the lease may be terminated.

A decree accordingly will be advised.