JOHN KENNETH DANBY,

*vs.*

THE OSTEOPATHIC HOSPITAL ASSOCIATION OF DELAWARE, a corporation of the State of Delaware, and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware.

*New Castle, November 18, 1953.*

*John Merwin Bader,* Wilmington, for plaintiff.

*Thomas Herlihy, Jr.,* and *Morris Cohen,* Wilmington, for defendant The Osteopathic Hospital Ass'n of Delaware.

*Rodney M. Layton,* of Richards, Layton & Finger, Wilmington, for defendant Wilmington Trust Co.

BRAMHALL, Vice-Chancellor: For the purpose of the motions in this case the following facts as alleged in the complaint and affidavits, are pertinent:

The Osteopathic Hospital Association of Delaware, hereafter called "defendant", was desirous of remodeling the building known as the Sellers Mansion into a hospital building. Plaintiff was president of its board of trustees from 1949 until his resignation on May 22, 1953. He was also quite active for several years in the solicitation of funds for the erection of an osteopathic hospital. At the direction of the board of trustees plans for the construction of the hospital build-

ing were prepared by an architect. To finance the work plaintiff was asked to, and did, sign as guarantor certain blank promissory notes and deliver them to defendant. At the same time the board of trustees of defendant passed a resolution authorizing defendant to borrow from the defendant Wilmington Trust Company the sum of $40,000. The notes endorsed by plaintiff were filled in for the principal amounts of $11,000, $10,000, and $10,000, respectively, payable on demand. Construction of the hospital building was begun in October of 1952. Some months later, at the further request of the board of trustees of defendant, plaintiff signed additional notes, all in blank, payable on demand, for a total sum of $15,000.

The sketches prepared by the architect provided for a three-story, basement hospital comprising the remodeled Sellers Mansion, together with a new wing. Due to an insufficiency of funds, the board of trustees of defendant decided to use only the basement and first floor of the Sellers Mansion without elevator service. Later, when additional funds became available, it was decided to build up to the third floor, install an elevator to the second floor, but to postpone construction of the additional wing until sufficient funds should be available for that purpose.

The notes over and above the sum of $31,000 have never been filled in, are still in the possession of defendant and have never been negotiated. Defendant proceeded with the remodeling of the Sellers Mansion, in the course of which it obligated itself for a sum in excess of $55,000, the amount guaranteed by plaintiff. After the construction work had begun, without consulting plaintiff, the board of trustees of defendant made a number of substantial changes in the plans for the hospital building, as a result of which, it is contended by plaintiff, defendant may be deprived of accreditation by the American Osteopathic Association. Upon learning of the change in plans plaintiff submitted his resignation as president of defendant and notified defendant not to use the blank notes signed by him remaining in its possession. Defendant has failed to return the notes, as a result of which plaintiff brings this action to enjoin defendants from using the notes not already discounted and from placing any liens upon the property of defendant.

Defendant contends that it is entitled to proceed with the erection of the hospital building on the ground that there was no agreement between plaintiff and defendant that the building must be erected entirely according to the plans of the architect, or that the guaranty of the notes by plaintiff was conditioned upon assurance by defendant that the architect's plans would be substantially followed. Defendant further contends that there was an agreement between defendant and plaintiff, in which plaintiff agreed to guarantee notes of defendant totaling $40,000, to be negotiated with the Wilmington Trust Company, and that, in consideration of the promise of plaintiff, defendant agreed to obligate itself on those notes for that amount and to proceed with the remodeling of the Sellers Mansion into an Osteopathic Hospital. It also contends that, in reliance upon plaintiff's promise to guarantee the notes and in pursuance of the agreement, it has incurred various construction costs and other obligations in excess of the total sum of the notes guaranteed by plaintiff.

May plaintiff revoke his guaranty as to those notes which have not been negotiated? Plaintiff contends that as to the notes, totaling $24,000, which have not been negotiated, his guaranty constitutes a "continuing guaranty", which may be revoked by him at any time before negotiation. Plaintiff says that the consideration for the guaranty is the extension of credit by the creditor and that until such credit is extended no consideration has passed from the obligee to the guarantor and therefore no binding contract of guaranty has come into existence. I must therefore consider the circumstances relating to the guaranty of plaintiff, as to whether or not plaintiff's guaranty constitutes a continuing guaranty, covering a series of future transactions, or whether or not there was a contractual relationship between the parties, constituting a bilateral contract or a unilateral contract supplemented by performance.

Ordinarily a promise of guaranty, when it is a mere offer by the guarantor, is revocable like any other offers until acceptance thereof. See cases cited in *Annotation in* 81 *A.L.R.* 790. If the offer is a divisible one, relating to obligations covering the power to make a series of separate contracts in the future, a notice of revocation is effective as to advances not yet made. However, it is possible that the real

consideration for the guarantor's promise is given for the whole transaction at the outset, even though the performance guaranteed may continue for a long or indefinite period of time, in which case the surety may not be relieved from his obligations by revocation. Reasonable interpretation of the words of the parties may show that their contract is really bilateral as a whole and not divisible into parts, the first act of acceptance making the contract and binding both parties. It is also possible that the offer may contemplate a binding and irrevocable option, to be consummated by advancement of a single amount upon the credit of the guarantor. See cases cited in *Williston on Contracts, (Revised Ed.) Vol.* 4,· *Sec.* 1253, *p.* 3587, and in *Corbin on Contracts, Vol.* 1, *Ch.* 2, *Sec.* 38, *p.* 121.

The affidavits filed in this case show that plaintiff was president of defendant's board of trustees; that for several years he had been active in the raising of funds for the construction of an osteopathic hospital; that at the instigation of the board of trustees of defendant plans for a hospital building were prepared by an architect; that it was believed that upon the construction of such a hospital building in accordance with these plans the hospital would become accredited by the American Osteopathic Association; that at a meeting of the board of trustees of defendant it was decided that credit in the sum of $40,000 would be needed in order to proceed with the work and that defendant did not have sufficient credit upon which to obtain this sum of money; that plaintiff agreed to guarantee the payment of this sum of money by defendant to the Wilmington Trust Company, from whom defendant contemplated borrowing the money; that plaintiff at the same time guaranteed a series of notes for the total amount of $40,000; that as a result of plaintiff's guaranty defendant negotiated certain of the notes with Wilmington Trust Company for amounts totaling $31,000, and proceeded with the construction work; that defendant further committed itself to other obligations substantially equal to or in excess of the amount guaranteed by plaintiff.

The agreement between the parties constituted a binding contract, the consideration for which was the promise by plaintiff to guarantee the credit of defendant and the promise of defendant, in return, to obligate itself by proceeding with the construction of the

building and the negotiation of the notes to the Wilmington Trust Company.  See *Affiliated Enterprises, Inc. v. Waller,* 1 *Terry* 28, 5 *A.2d* 257; *Szymanska v. Equitable Life Insurance Co.,* 7 *W.W.Harr.* 272, 183 *A.* 309.  It is not necessary that the consideration be labeled as such if it was sufficient.  *Equitable Trust Co. v. Gallagher,* — *Del. Ch.* —, 99 *A.2d* 490; *Gottlieb v. Heyden Chemical Corp.,* — *Del.Ch.* —, 90 *A.2d* 660, 664.  Assuming that plaintiff's contention that the contract is a unilateral one to be correct, this would not help plaintiff because there has been at least part performance on the part of defendant, making it a binding contract.  *Abbott v. Stephany Poultry Co.,* 5 *Terry* 513, 62 *A.2d* 243; *Ashland Hotel & Realty Co. v. Carruthers,* 292 *Ky.* 245, 165 *S.W.2d* 978; *Wilck v. Herbert,* 78 *Cal. App.2d* 392, 178 *P.2d* 25.

The authorities relied upon by plaintiff relate to agreements contemplating a series of transactions involving the purchase of goods which are invalid for want of consideration as to any goods which have not been delivered by reason thereof.  The principle of law stated in those cases is not disputed, but it is not applicable here, since the subject matter of this contract is of a character quite different.  The offer of plaintiff to guarantee the credit for the construction of the building and the acceptance by defendant constitute an agreement covering the whole transaction.  The act of defendant in proceeding with the construction of the building and in obligating itself for the full amount of plaintiff's guaranty would be sufficient consideration even if defendant's acceptance of plaintiff's offer should not be construed as a binding contract.

I conclude that plaintiff and defendant entered into a binding agreement, which was not revocable by plaintiff.

Was defendant guilty of a breach of the contract?  Plaintiff contends that even if I should hold that there is a contract between the parties covering the whole transaction and that plaintiff cannot therefore revoke his obligations as guarantor on any of the notes, defendant has breached the contract by failing to follow substantially the plans of the building as laid down by the architect.  Plaintiff says that his guaranty was based upon the understanding on his part that the build-

ing would be erected in substantial compliance with these plans, with the thought that the hospital, when its building was completed, would be accredited by the American Osteopathic Association. Plaintiff does not contend that there was any distinct agreement between defendant and plaintiff in this respect; he says that the obligation of defendant to follow the plans of the architect was implicit in the whole undertaking between the parties.

██ ██ The law will imply an agreement by the parties to contract and to do and perform those things which according to reason and justice they should do in order to carry out the purpose for which the contract is made. See cases cited in 17 *C.J.S., Contracts,* § 328, *note* 40. However, such promise can be implied only where it can be rightfully assumed that it would have been made if attention had been directed to it. *Gluckman v. Holzman,* 30 *Del.Ch.* 60, 53 *A.2d* 246. A promise will not be read into a contract unless it arises by necessary implication from the provisions thereof. Terms are to be implied in a contract not because they are reasonable but because they are necessarily involved in the contractual relationship so that the parties must have intended them and have only failed to express them because they are too obvious to need expression. They are implied only because they are necessary to give the contract the effect which the parties as fair and reasonable men presumably would have agreed on, if, having in mind the possibilities of the situation which has arisen, they had contracted expressly in reference thereto. See cases cited in 12 *Am.Jur., Contracts,* § 239, *p.* 765.

██ I do not find in this case any circumstances under which it must necessarily be assumed, in order to carry out the intention of the parties, that if the matter had been called to their attention, they would have stipulated that the plans of the architect be followed substantially in the erection of the building. It is reasonable to assume that if plaintiff were insisting that the plans of the architect should not be altered without his consent he would have so stipulated at the time he endorsed the second series of notes. Plaintiff had been active for several years in endeavoring to secure funds for the erection of an osteopathic hospital. He, probably more than anyone else connected with defendant, understood the difficulties of raising sufficient money

for that purpose. He must have also understood that in view of such difficulties it would probably be necessary to modify the plans of the architect, or to comply with only a portion thereof, until such times as further funds would be available. Under such circumstances, I cannot infer that plaintiff would not have endorsed the notes if he had known that the board of trustees would later find it necessary or advisable to make a change in the plans. It is clearly indicated in plaintiff's affidavit that his primary intention was to assist defendant in erecting a hospital building and that he understood fully the difficulties which defendant would have in constructing such a building to the entire satisfaction of everyone concerned until additional funds could be obtained from time to time for that purpose. Nothing was said by plaintiff relative to the change in plans at or before the time he guaranteed the notes. Although minutes were written in the minute books of defendant relative to the determination of defendant to proceed with the work, nothing is contained therein to indicate that defendant understood that plaintiff's guaranty was based upon substantial compliance with the plans of the architect. I cannot accept plaintiff's contention that such understanding was implicit in the agreement between the parties.

Does the understanding between the parties come within the Statute of Frauds? Plaintiff contends that because no memorandum of the contract has been signed by or for the plaintiff no action can be maintained on the agreement. He relies on the statute found in *Del.C.*1953, *Title* 6,§ 2714(*a*), the pertinent portion of which is as follows:

"No action shall be brought * * * to charge any person to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing * * *."

The difficulty which I have with plaintiff's assertion in its application to the present case is that plaintiff's promise was not to the creditor but to the debtor itself. In the case of *Moscon v. North*

*American Benefit Association,* 9 *W.W.Harr.* 495, 2 *A.2d* 898, 899, Judge Rodney said:

> "The Statute applies only to promises made to a person to whom another is answerable. In other words, the Statute is held to refer only to promises made to the creditor and not to the debtor himself."

See also cases cited in 37 *C.J.S., Frauds, Statute of* § 19, *page* 526, *note* 15.

■ Plaintiff and defendant entered into an agreement whereby plaintiff promised to furnish credit to defendant so that defendant could proceed at once with the construction of the hospital building. In return, defendant promised,—and followed up by performance,—that it would proceed at once with the construction of the hospital building. This constituted a new and independent contract existing entirely between the immediate parties to it. *S. Landow & Co. v. Gurian,* 93 *Conn.* 576, 107 *A.* 517; *Schumm, by Whymer v. Berg,* 37 *Cal.2d* 174, 231 *P.2d* 39, 21 *A.L.R.2d* 1051.

I conclude that defendant is not barred by the Statute of Frauds from asserting the agreement between plaintiff and defendant.

■ Should defendant's motion to dismiss be granted? Defendant has moved under *Rule* 12(*b*)(6) of this court, *Del.C.Ann.,* to dismiss the complaint for failure to state a claim upon which relief can be granted. Such a motion involves the contention on the part of defendant that the pleading to which it is addressed does not in itself state a claim for relief. See *Federal Practice & Procedure, Vol.* 3, § 1240, p. 106. On a motion to dismiss, all well pleaded allegations must be accepted as true. *Colton v. Wade,* 32 *Del.Ch.* 122, 80 *A.2d* 923. A complaint will not be dismissed for failure to state a claim unless it appears to a certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief. Vagueness or lack of detail are not sufficient grounds alone to dismiss complaint for failure to state a claim. *Morgan v. Wells,* 32 *Del.Ch.* 108, 80 *A.2d* 504.

Plaintiff alleges in his complaint an agreement between defendant and plaintiff that defendant would erect a hospital building according to certain plans prepared by an architect; that plaintiff relied on such promise at the time he guaranteed the notes; that without plaintiff's consent defendant made a number of substantial changes in the lay-out of the hospital building. These allegations are sufficient to allege an agreement between the parties and a breach thereof by the defendant. It is true that the affidavits submitted by the parties indicate that there was no definite understanding between plaintiff and defendant that defendant would follow definitely the plans laid out by the architect. *Rule* 12(*b*)(6) provides that where matters outside the pleadings are presented and not excluded by the court the motion should be treated as one for summary judgment and disposed of as provided in *Rule* 56 and that all parties should be given reasonable opportunity to present all material matter pertinent to such motion by *Rule* 56. The affidavits which were filed by both plaintiff and defendant were filed for the purpose of considering the question of whether or not a preliminary injunction should be granted. The motion to dismiss was not pressed by defendant at the argument and the parties were not given reasonable opportunity as provided by the rule to present all material matter which might be pertinent to such motion. They therefore cannot be considered here.

The motion to dismiss will be denied.

Should the motion of defendant Wilmington Trust Company to dismiss be granted? Defendant Wilmington Trust Company has moved under *Rule* 12(*b*)(6) to dismiss the complaint as to it for failure to state a claim upon which relief may be granted. Plaintiff resists this motion, asserting that Wilmington Trust Company is a proper party to the action, that plaintiff is entitled to final relief other than that specifically prayed for, and that, at least at the preliminary stage, defendant Wilmington Trust Company should be enjoined since such action could do no harm.

The motion should be granted. Wilmington Trust Company is not a party to the original transaction. It does not hold the notes over which this action arose. There is no necessity of issuing

an injunction against Wilmington Trust Company, since an injunction against defendant enjoining it from negotiating the notes would be sufficient for the protection of plaintiff's rights if plaintiff should be entitled to such relief. The fact that no harm will ensue to Wilmington Trust Company by the granting of an injunction at the preliminary stage is not persuasive. An injunction will never issue simply because it will do no harm. *Allied Chemical & Dye Corporation v. Steel & Tube Co. of America,* 14 *Del.Ch.* 117, 122 *A.* 142. Neither should an injunction issue unless necessary for the protection of plaintiff's rights.

The motion of Wilmington Trust Company to dismiss the complaint will be granted.

The restraining order previously issued in this case will be dissolved and the motion for preliminary injunction will be denied.

An order will be entered, on notice, in accordance with this opinion.